AMOS BINNEY, APPELLANT v. THE CHESAPEAKE AND OHIO CANAL COMPANY.

202

204

The case was argued by Mr Key and Mr Webster, for the appellant; and by Mr Swann and Mr Coxe, for the appellees.

206

Mr Justice THOMPSON delivered the opinion of the Court.

This case comes before the court from the circuit court of the District of Columbia, for the county of Washington, on appeal from a decree, dismissing the bill of the complainant in that court, who is the appellant here.

The questions involved in this controversy, are highly important to the parties in a pecuniary point of view, and embrace, in some measure, public considerations, connected with the Chesapeake and Ohio Canal Company. These considerations have led to a range of argument at the bar, and the discussion of many questions, important and interesting in themselves, but which are not raised by the case, now presented to the judgment of this court: and we shall confine ourselves to the questions properly arising out of the pleadings in the cause.

The bill filed in the court below charges, that, prior to the year 1784, the appellant, and those under whom he claims, held title to, and were in possession of certain tracts of land on the shore of the river Potomac, where the said river was innavigable. That these lands, being situated on that part of the river, called the Little Falls, were susceptible of being improved, by applying the water of the said river to manufacturing purposes, and were, prior to the year 1784, intended by the proprietors to be so improved.

That when the charter of the Potomac Company was granted, it was known that such improvement was intended. And that the charter expressly secured the rights of such proprietors, by the thirteenth section of the act incorporating that company in the year 1784.

The bill then charges, that in the year 1825, the Chesapeake and Ohio Canal Company obtained a charter, by which, and the proceedings under it, this company obtained a surrender from the Potomac Company, of all its chartered rights, privileges and property ; and now holds the same, in the same manner, and to the same effect, as they were before held by the Potomac Company.

The bill further charges, that in the year 1793, the Potomac Company made a condemnation under its charter, of a portion of these lands for a canal, and made a canal through the same; which was so constructed as to admit more water than was necessary for navigation. Which surplus water was wasted on the lands of the complainant, at four sluice gates, and three waste dams, and continued to be so wasted at such places, during the continuance of the works of the said company.

That the Chesapeake and Ohio Canal Company, since their incorporation, and the surrender of the charter of the Potomac Company to them, have taken the possession of the canal of that company, and of the land so condemned. And have also entered upon other portions of said land, adjacent thereto, and have greatly enlarged and deepened the said canal, and constructed a part of it as a feeder for the main canal ; and erected a permanent stone dam across the river, and introduced into the land a large quantity of water, for the purpose, as is alleged, of obtaining a large volume of surplus water, to sell for manufacturing purposes, and to be applied to other canals to be hereafter authorised.

The bill further alleges, that these works may, if necessary, be still further enlarged, so as to admit a still further supply of water, which might be conveniently applied to the purposes, both of navigation and manufactories. And that although all the water now admitted, is abundantly sufficient, both for navigation and, for manufacturing purposes, without enlargement; yet, that the complainant has always been, and yet is willing to make an equitable arrangement to pay a fair pro-

portion of the expense of such enlargement, if the same shall be adjudged necessary.

The bill further charges, that by these works of the two companies, it has been made, if not impracticable, yet very expensive and difficult for him to apply the water of the river to works upon his lands, without taking the same out of the said canal and feeder ; *and he claims, that under these charters* he is entitled to be allowed the use of the surplus water out of the canal and feeder. But that the defendants have wholly refused to admit him on any terms, to use the said surplus water; or to make any equitable agreement for the enlargement of the said works; if they shall contend that such enlargement is necessary.

And the specific relief prayed is, that the complainant be allowed to use the surplus water now admitted into the canal and feeder, which, he avers, is abundantly sufficient, both for navigation and manufacturing purposes. And, if found insufficient, then to be allowed to have the works enlarged, upon equitable terms, to admit a sufficient supply of water for both purposes.

The answer denies the right of the appellant to the specific relief prayed, or to any relief whatever. Denies that he, or those under whom he claims, had any right to the use of the water of the river on their lands, for manufacturing purposes, prior to the charter to the Potomac Company, in the year 1784. Denies that such right, if he has it, has been affected by the works of either company. Denies the complainant's right to any use of the water, under the charter to the Potomac Company, or under the charter to the Chesapeake and Ohio Canal company.

The defendants admit, that they have enlarged the canal and feeder, so as to receive more water than is necessary for the purpose of navigation, and that a considerable quantity of surplus water, might be used on that part of the canal adjacent to the lands claimed by the appellant, and through which the canal runs, without injury to the navigation of the canal. But they claim said water as their own exclusive property, and insist they have the same right, in disposing of it, that they have over any other description of property, to which their right is absolute and unconditional.

It will be perceived, by this statement of the bill and answer,

that many of the questions which have been raised and argued at the bar, are not necessarily involved in the decision of the cause. The rights of the appellant, and of those under whom he claims, as riparian proprietors, antecedent to the charter of 1784 to the Potomac Company, are not drawn in question, under the allegations in the bill. The appellant does not set up any right in hostility to the rights granted by those charters; but his claim rests upon an affirmance of those charters. His claim is of a right to the use of the surplus water, now admitted into the canal and feeder ; and if that is insufficient, both for navigation and manufacturing purposes, his prayer is, that the defendants may be compelled to allow the works to be enlarged, so as to admit a sufficient supply of water for both purposes. He seeks, therefore, to divert a still greater quantity of water from the river, and thereby further impairing riparian rights, if any exist which can be affected by diverting such a portion of the water from the river into the canal.

Nor does the bill seek any relief, founded on an objection to the validity of the proceedings to obtain a condemnation of the land. Nor is there any complaint, that the company entered upon other portions of the land (not included in the condemnation of 1793), without authority. No injunction is prayed to restrain the defendants from the use of such land; and this cannot be granted under the general prayer. No proper case is made for such relief. It does not come within the scope and object of the bill ; and would be inconsistent with the specific relief prayed : which, instead of restraining the defendants from the use of such lands, seeks to compel them to enlarge the canal still more, if necessary, to accomplish the purposes for which the complainant wants the water.

Nor is it matter of complaint to be made by the appellant, that the company avow a determination to dispose of the surplus water, after it passes through his land, for their own benefit and profit. This cannot in any manner, prejudice the complainant. And the bill only charges, that such is the avowed purpose of the defendants, when it can be done without injury to the navigation, and in case they can obtain an enlargement of their charter.

By the appellant's own allegations, therefore, the defendants disclaim any intention to waste the surplus water, unless it can

be done without prejudice to the navigation, nor without obtaining further permission for that purpose from the competent authority.

The right of the appellant, therefore, to the relief sought, is narrowed down to the single inquiry; whether his claim can be sustained under the thirteenth section of the charter of 1784 to the Potomac Company.

That section is as follows: "Whereas some of the places through which it may be necessary to conduct the said canals, may be convenient for erecting mills, forges, or other water works; and the persons, possessors of such situations, may design to improve the same; and it is the intention of this act not to interfere with private property, but for the purpose of improving and perfecting the said navigation. Be it enacted, that the water, or any part thereof, conveyed through any canal or cut, made by the said company, shall not be used for any purpose but navigation, unless the consent of the proprietors of the land, through which the same shall be led, be first had. And the said president and directors, or a majority of them, are hereby empowered and directed, if it can be conveniently done, to answer both the purposes of navigation and water works aforesaid, to enter into reasonable agreements with the proprietors of such situation, concerning the just proportion of the expenses of making large canals or cuts, capable of carrying such quantities of water as may be sufficient for the purposes of navigation, and also for any such water works as aforesaid."

We think, that the relief sought by the appellant, cannot be granted under this section of the charter. The whole structure of the act shows, that the great and leading purpose for which this company was incorporated, was for the extension of the navigation of the Potomac. Every antecedent provision of the charter looks to that object. The president and directors are authorised to employ persons to cut such canals, and erect such locks, and perform such other works as they shall judge necessary, for opening, improving and extending the navigation of the river. The said river, and the works to be erected thereon, in virtue of this act, when completed, are declared for ever thereafter to be esteemed and taken to be navigable, as a public highway, subject to the payment of cer-

tain tolls, &c. The act declares, that it is necessary for the making of said canal, locks and other works, that provision should be made for condemning a quantity of land for that purpose. And the proceedings thereupon are accordingly prescribed by the act, where no voluntary agreement can be made with the owners of the land, for taking a limited quantity against the will of the owner, on payment of the damages, to be assessed by a jury.

After these, and some other provisions are made; clearly indicating an intention, that the purpose for which the lands were to be taken was for navigation only, and limited to a quantity necessary for such public objects: then comes the clause in question, presenting other purposes, and providing for other objects, where circumstances will justify connecting private enterprizes with the leading public purposes of navigation.

But this clause in the act seems studiously to guard against blending these two objects by any compulsory measures; but to make it the result of mutual and voluntary arrangement between the company, and the owners of the land upon which the water works are to be erected. It is declared in explicit terms, that it is the intention of the act not to interfere with private property, except for the purpose of improving and perfecting the said navigation; and that the water shall not be used for any purpose but navigation, unless the consent of the proprietors of the land, through which the canal shall run, be first had. It would be a very rigid and forced construction of this act, to place the company at the will and pleasure of the owners of the adjacent lands, especially if this should be considered a continual subsisting right, after the canal has been once completed. If the company are prohibited from using the water, except for navigation, without the consent of the owner of the adjacent land, and yet be obliged to yield to the wishes of such owner, to alter and enlarge the canal, there would be wanting that mutuality, which is essential to the just and reasonable regulation of all rights. All the legislative provision necessary, was to authorise the company to enter into such agreement with respect to the use of the water : the owner of the adjacent land required no such special permission ; this is a right incident to his ownership of the land. The authority on both sides to

make such agreement being established, all was left open to the mutual arrangement of the parties, like all other contracts. But to compel one party to consent, and leave the other at liberty to consent or not, at his pleasure, would be a violation of all sound principles of justice.

Much stress has been laid on the word *directed*, as used in the statute. " The company are hereby empowered and directed, &c." The word, if standing alone, might imply something mandatory to the company. But it must be taken with the context, and the general scope and object of the provision, in order to ascertain the intention of the legislature. There was an absolute prohibition to the company to give their assent to such private use of the water, and the obvious intention of the act was, to remove that prohibition, and place the company in a situation capable of entering into arrangements with the owners of the adjacent lands, respecting the use of the water, for the purpose of carrying on water works of various descriptions, when it could be done conveniently. But the whole structure of the clause shows, it was to be a voluntary and mutual agreement of the parties. It cannot be supposed, that if any compulsory measures were contemplated, the act would have been left so entirely silent, as to the mode and manner in which this was to be enforced upon the company. If, as we think, it clearly was the intention of the act, that their use of the water should be subject to the mutual agreement of the parties, no legislative provision was necessary. The parties having authority to make the agreement, they could make it, in any manner, or under such modifications as they might think proper.

It is not a well founded objetion to this construction of the act, that the most apt and appropriate phraseology to convey this meaning, has not been employed. The great object is, to ascertain the intention of the legislature ; and there is certainly nothing in the language used, that is repugnant to the construction we have adopted.

If the right of the appellant to compel the company to make the agreement, was clearly established, it might be within the province of a court of chancery, to enforce the consummation of such agreement, and carry it into effect. But the entire absence of any provision looking to compulsory measures, as to

the mode nd manner in which the agreement is to be made or executed, is a very strong, if not conclusive reason to show that no such right exists; and leads irresistibly to the conclusion, that this is a matter left open for the voluntary arrangement of the parties.

To consider the company bound to enter into such agreements with the owners of the adjacent land, the whole extent of the canal, and liable to be called upon to alter and enlarge the same, at the pleasure of such owners; would be imposing an expense and limitation upon their chartered rights, which ought not to be adopted, without the most explicit and unequivocal provision in their charter. And which, we are very clearly of opinion, is not imposed upon the company in the present case.

The decree of the court below is accordingly affirmed.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Columbia, holden in and for the county of Washington, and was argued by counsel; on consideration whereof, it is ordered, adjudged and decreed by this court, that the decree of the said circuit court in this cause be, and the same is hereby affirmed with costs.