GEORGIE N. PETERSON

v.

THE ILLINOIS LAND AND LOAN COMPANY ET AL,

</div>

1. CAPITAL STOCK OF CORPORATIONS.—The capital stock of an incorporated company constitutes a trust fund for the payment of its debts. When debts are incurred, a contract arises with the creditors that it shall not be

withdrawn or applied otherwise than upon their demand. They have a lien upon it in equity, and if diverted, they may follow it as far as it can be traced, and subject it to the payment of their claims, except as against *bona fide* holders for value without notice.

2. STOCKHOLDERS—NOTICE.—Stockholders are affected with notice of the trust character of the capital stock, and they cannot occupy the *status* of innocent purchasers.

3. TRANSFER BEFORE JUDGMENT AGAINST THE COMPANY.—Although appellant did not obtain a judgment against the company until after the conveyance of its stock and property, yet the contract out of which the cause of action grew, was made prior to such transfer, and to all intents and purposes she was a creditor of the company at the time of the conveyance. The conveyance was made by the company to one who was a stockholder at the time her property was wrongfully taken, and he is chargeable with knowledge of the acts of the company.

4. CORPORATION CANNOT PURCHASE ITS OWN STOCK.—A corporation has not the power, as against creditors, to extinguish its capital stock. So, where a corporation conveyed to one of its shareholders a large amount of real estate and other property, and in return received the surrender of the shares of stock held by him, which were then cancelled, *held,* that a judgment creditor of the corporation could maintain a bill to subject the property so conveyed to the payment of her judgment; and that it made no difference that there might be enough property remaining with the corporation to satisfy the judgment, her lien attached to the whole stock, and she could not be remitted to a remedy against the remaining shares.

ERROR to the Circuit Court of Cook county; the Hon. W. H. BARNUM, Judge, presiding. Opinion filed April 27, 1880.

This was a bill in chancery brought by appellant against the Illinois Land and Loan Company, Caleb Clapp et al., to subject effects in the hands of Clapp to the payment of a decree obtained by appellant in May, 1877, against said company and others.

By the will of her step-son, Percy W. Bonner, who died in July, 1870, appellant became the owner of his personal property. In September thereafter she was induced by the fraudulent misrepresentations of the Land and Loan Company to sell, and did sell, to it all of said property for a greatly inadequate consideration. Upon discovering the fraud, she filed her bill in November, 1874, to set aside the sale, and on May 1st, 1877, obtained a decree against the company and its agent, W. K. Reed, for $5,653.83, which decree was affirmed by the Supreme

Court in June, 1879. Reed et al. v. Peterson, 91 Ill. 288. An execution was issued, which was returned *nulla bona*, and after a refusal by the Supreme Court to grant a re-hearing, a second execution was issued, which was also returned with a like indorsement.

The Land and Loan Company was chartered by an act of the legislature in 1867, with a capital stock of $100,000, all of which was paid in. Its business was dealing in lands, tax titles, tax certificates, etc. At the time the company obtained from appellant her property, as above stated, Clapp was the owner of a majority of the capital stock of the company, being the holder of 555 of the 1,000 shares of which the capital stock was composed, and so continued until January, 1874, when he surrendered to the company his 555 shares, in consideration of which the company conveyed to him two lots of land in Chicago, one of the estimated value of $5,500, and the other of $50,000. The company also assigned to Clapp a decree for $6,506.25, rendered in its favor by the Circuit Court of Cook county in certain partition proceedings instituted by William R. Bonner, an heir of Percy W. Bonner. This assignment was made on the 12th day of March, 1877, in consideration of a breach of the company's warranty of title, by a partition decree in favor of Bonner, to a portion of the lots previously conveyed by the company to Clapp. The 555 shares of stock after its surrender to the company in payment of the lots, were cancelled and never re-issued, and Clapp has ever since continued to be and still is the owner of the lots and of said decree, and is a non-resident of this State. It is claimed by appellant that the lots and the decree in favor of Clapp should be adjudged to be held by him in trust, and be subjected to the payment of appellant's decree against the company.

The case was heard upon bill, answer, replication and proofs, and the court below entered a decree dismissing the bill, from which decree complainant appealed to this court.

Messrs. Page & Plum, for appellant; as to the trust character of the capital stock of a corporation, cited 2 Story's Eq. § 1252; Wood v. Dummer, 3 Mason, 308; Vose v. Grant, 15 Mass. 505.

It is pledged to the payment of creditors of the corporation: Sanger v. Upton, 91 U. S. 60; Tinkham v. Borst, 31 Barb. 407; Spear v. Grant, 16 Mass. 505; Ogilvie v. Knox Ins. Co. 22 How. 387; Mumma v. Potomac Co. 8 Pet. 286; Curran v. Arkansas, 15 How. 304; Hightower v. Thornton, 8 Geo. 486; Adler v. Milwaukee P. B. Co. 13 Wis. 60; Perry on Trusts, 835.

Stockholders are charged with notice of the trust character of the capital stock: Angell and Ames on Corporations, § 600; Thompson's Liability of Stockholders, § 13; Wood v. Dummer, 3 Mason, 313; Upton v. Hasbrough, 3 Biss. 426.

A corporation cannot diminish its capital stock to the injury of its creditors: Chetlain v. Republic Life Ins. Co. 86 Ill. 224; C. P. & S. W. R. R. Co. v. Marseilles, 84 Ill. 646.

The liability of the stockholders is not joint but several: Marsh v. Burroughs, 1 Woods, 463; Hatch v. Dana, 12 Chicago Legal News,269.

Mr. GEORGE SCOVILLE and Messrs. ISHAM & LINCOLN, for appellees; that corporations have the power to purchase their own stock, cited Taylor v. Miami Ex. Co. 6 Ohio, 218; Coleman v. Columbia Oil Co. 51 Pa. St. 77; C. P. & S. W. R. R. Co. v. Marseilles, 84 Ill. 643; City Bank v. Bruce, 17 N. Y. 507; Hartridge v. Rockwell, R. M. Charlt. 260; Angell and Ames on Corporations, § 280; Brice on Ultra Vires, 175; Williams v. Savage Mfg. Co. 3 Md. Ch. 452; State v. Smith, 48 Vt. 266; Stringer's Case, 4 Ch. App. 475.

Appellee Clapp is not concluded by the decree under which appellant claims; he was not a party to it: Hopkins v. Roseclare Lead Co. 72 Ill. 373; Atkins v. Billings, 72 Ill. 597.

WILSON, J.   The principle is firmly established that the capital stock of an incorporated company constitutes a trust fund for the payment of its debts.   It is a substitute for the personal liability which subsists in private partnerships.   When debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied otherwise than upon their demands.   The creditors have a lien upon it in equity, and if

diverted, they may follow it as far as it can be traced, and subject it to the payment of their claims, except as against holders who have taken it *bona fide*, for a valuable consideration, without notice. Wood et al v. Dummer et al. 3 Mason, 308; In 2 Story's Eq. Sec. 1252, it is said: "Creditors have a lien or right of priority of payment on the capital stock of a corporation, in preference to any of the stockholders, and the creditors may enforce their claims against any property belonging to the corporation which has not passed into the hands of a *bona fide* purchaser for such property will be held affected with a trust primarily for the creditors of the company, and subject to their rights secondarily for the stockholders, in proportion to their interest therein."

See, also, Perry on Trusts, Sec. 217; Mumma v. The Potomac Co. 8 Pet. 208; Curran v. Arkansas, 15 Howard, 304; Spear v. Grant, 16 Mass. 9; Sanger v. Upton, 91 U. S. 60; Oglevie v. Knox Ins. Co. 22 Howard, 387.

Another principle equally well settled, is that stockholders are affected with notice of the trust character of the capital stock. As to it they cannot occupy the status of innocent purchasers, but they are to all intents and purposes privies to the trust; whenever they have in their possession any of the trust fund they hold it *cum onere*, subject to all the equities which attach to it. Angell on Corporations, Sec. 600, where it is said:

"It is clear that as to stockholders themselves there could be no pretense to say that both in law and in fact they are not affected by the most ample notice." See, also, Wood v. Dummer, *supra*, and cases there cited.

Was appellant a creditor of the company at the time of the conveyance to Clapp of the lots? That the company obtained her property in 1870 for an inadequate consideration, by means of fraudulent misrepresentations, is conclusively established by the decree of the circuit court against the company. The act of the company in thus wrongfully obtaining her property created a legal liability which is to be regarded as a debt, and the court upon a final hearing of the cause adjudged to appellant a money decree therefor for $5,653.83. Although appellant

did not file her bill until after Clapp had obtained a conveyance of the lots by the surrender of his stock, and the amount of the company's indebtedness was not finally determined until the rendition of the decree in 1877, the debt originated in 1870, and was an existing obligation resting upon the company long prior to, and at the time of the conveyance of the lots to Clapp. At the time, of the filing of the bill the debt was not barred by the Statute of Limitations, nor could *laches* be imputed to the complainant by the delay in asserting her claim, for she filed her bill as soon as she learned she had been defrauded. At the time her property was taken, Clapp was a stockholder in the company, and as such was chargeable with notice of the acts of the company, and of the legal liability resulting therefrom. The act of the company was in legal contemplation the act of Clapp. It was done by the officers of the company, and they are the agents of the stockholders.

We think, therefore, there is no ground for claiming that appellant did not occupy the relation of a creditor to the company at the time of the conveyance of the lots to Clapp, and the surrender by him of his shares of stock.

It is urged by the learned counsel for appellee that corporations have the power to invest their funds in the purchase of their own stock, and that when such purchase is made in good faith and free from any imputation of actual fraud, it will not be set aside at the instance of creditors; and we have been referred to a large number of authorities in support of this proposition. In England the doctrine is well settled that corporations, whatever the nature of their business, cannot, without an express and clear authority in their charters, deal in their own stock.

In Brice on Ultra Vires, 2nd American Edition, 94, it is said: "There is a great difference between dealing in the shares of other companies and its own. The former is ordinary business, attended only with the usual risks of ordinary transactions, but the latter tends inevitably to breaches of their duty on the part of the directors, and to fraud and rigging the market on the part of the corporation; consequently a corporation, to possess such a power, must have it conferred by the plainest and most explicit language in the constituting instruments."

Peterson v. Ill. Land & Loan Co.

The New York Revised Statutes put it out of the power of a moneyed corporation to apply any portion of its funds, except surplus profits, to the purchase of shares of its own stock, or to receive any such shares in payment or satisfaction of any debt, save that if any shares of its stock shall be pledged to the corporation, and the debt secured thereby shall not be paid when due, the directors shall within 60 days thereafter cause such shares to be sold, and if they be not sold within that period, and the debt remains unsatisfied, the shares shall be charged at the amount actually paid thereon, as a reduction of the capital stock, and no dividend shall be thereafter made until the deficit so created be made good.

It may be conceded that the current of American authorities is to the effect that under certain circumstances, and for certain purposes, moneyed corporations, and corporations possessing banking powers, may invest their funds in the purchase of their own stock; but that this is of universal application, or that the power of a corporation to purchase its own stock is unrestricted and without limit, we are not prepared to admit; nor do we think the authorities to which we have been referred, sustain such a proposition.    A careful examination of the cases cited by appellee, will, we think, sufficiently show that the rule is subject to some qualifications, one of which is that the purchase shall not be made in such manner as to diminish the capital stock, upon which creditors have a right to rely for their security; or in other words, so as not to withdraw the trust fund created for their benefit.

In Taylor v. Miami Exporting Co. et al. 6 Ohio, 177, the leading case cited by appellees, and which is referred to in most other cases cited by them, the complainant, who was a stockholder, contracted a debt with the company for $3,000, upon a pledge of his stock; and the bill alleges that the company were pressing the debt to judgment, notwithstanding the pledge of the stock.    The bill called in question the action of the company in passing a resolution by the board of directors, whereby it was agreed to accept a transfer of stocks from other debtors of the company in payment of their debts; and charged that certain of the defendants named in the bill, had

made transfers under the resolution, and thereby withdrawn so much of the capital stock. The bill claimed that the directors, by the charter, were not authorized to receive stock of solvent persons in payment of their debts, because it was a withdrawal of so much of the capital stock of the company. The court held, that under the powers contained in the charter, the company were authorized to purchase their own stock; and that under the circumstances of the case, the transfer of the stock in payment of debts was not necessarily a withdrawal of so much of the capital stock; but we think the implication is clear from the language of the court, that if such had been its effect, the transfer would have been declared unauthorized. Chief Justice Follett, in delivering the opinion of the court, says:

"The ostensible object of those who obtained the charter was to purchase the agricultural and manufactured implements of the country, and to transport them to foreign markets. Their real object was banking; and the directors were by the charter designedly given the most extensive powers over the funds of the company, so as to authorize them to employ the whole in business other than that apparently intended as the sole object of their incorporation. By section five it is provided that the president and directors 'shall have the sole management of the funds;' and by section six, the president and directors are authorized 'to dispose of the funds of the company in such manner as they shall think most advantageous to the company.' The directors are here undoubtedly authorized to cease merchandising, and to dispose of the funds of the company in banking, in discounting notes and bills of exchange if they think it 'most advantageous.' They are as undoubtedly authorized to dispose of their funds and to employ their agents in buying and selling the stocks of other companies, if they think this 'most advantageous.' It appears from the testimony in the case, that they were at one time largely and profitably employed in buying and selling the stock of the bank of the United States. If they could so vest their funds, why have they not power to buy and sell their own stock? If they think it most 'advantageous to the company,' they can purchase at

auction, by private sale, for cash or notes or other property, or on credit, or can take it in payment of debts due from stockholders, whether solvent or insolvent. To take it of solvent stockholders in payment of debts, might be more advantageous to the company than to pay for it in cash or good bills. We do not see that the purchase in any of these modes is necessarily a withdrawal of so much of the capital stock of the bank."

Much stress is laid upon the words of the charter, repeatedly quoted and italicized by the learned chief justice, giving the directors the power to dispose of the funds of the company in such manner as they shall think most advantageous; and the court concludes that in the usual course of business of the bank, the investing its funds in the purchase and sale of stocks, or the purchase of its own stock, or receiving the same in payment of the debt, did not operate as a withdrawal of the capital stock. The substance of that decision, is that under the provisions of its charter the bank had power to invest its funds in the purchase and sale of its own stock, as it did not thereby diminish its capital stock; and we think the inference a legitimate one, that if the court had arrived at the conclusion that the taking of the stock in payment of the debt would, under the circumstances, have been a withdrawal of so much of the capital of the bank, the transaction would not have been sanctioned. It was regarded by the court as a mode of investment of the funds of the bank, the shares being held subject to purchase and sale as other shares, and that the capital stock was not thereby diminished.

Like comments we think are fairly applicable to other cases cited by the counsel for appellee. We shall not stop to refer to them in detail, it being sufficient to say that in none of them, nor in any case which has come under our observation, has it been held that a corporation has the power, as against creditors, to extinguish its capital stock. In none of the cases cited did the question arise between the corporation and creditors; and whatever may be the rule as to the power of a corporation to purchase its own stock, or to receive it in payment of debts, as between it and its stockholders, very different con-

siderations apply as to creditors. If it be true that the capital stock is a trust fund for the security of creditors, it would seem to follow as a necessary sequence that the corporation cannot diminish it by purchase. In the present case it was not the taking of stock pledged for the payment of a debt due to the company, nor yet a purchase of the stock to be held as an investment for the benefit of the company and its stockholders generally. The stock was never re-issued but was cancelled and extinguished, thus diminishing by more than one-half the entire capital of the company. Moreover, the company conveyed to Clapp valuable real estate in exchange for his stock, and thereby reduced its available assets to the extent of the value of the property conveyed. If it could do this with one shareholder, it could do it with another, until there should be neither capital stock nor corporate property remaining out of which to satisfy the demands of creditors; thus committing a species of legal *felo de se*, with no estate left upon which to administer. We do not think the law is chargeable with so grave an inconsistency.

In the case of Bartlett v. Drew, decided by the New York Commission of Appeals, in 1874, 57 N. Y. 587, which was an action in the nature of a creditor's bill, brought by a creditor of the New Jersey Steam Navigation Company, after the return of an execution, *nulla bona*, to reach certain assets of the company alleged to be in the hands of Drew, a case quite analogous to the present one, the court say: " It is a very plain proposition that the stock and property of every corporation is to be regarded as a trust fund for the payment of its debts, and its creditors have a lien and the right of priority of payment over every stockholder. * * * In the present case, the corporation was proceeded against as an ordinary debtor, either unwilling or unable to pay; but it was found that Drew had a large amount of the assets in his possession which belonged to the corporation when the plaintiff's demand accrued, and some portion of which should have been applied in discharge of its obligation to the plaintiff. As before suggested, it does not matter how it came to the possession of Drew. It is enough that he had it, and that it was so much of the assets of the cor-

poration as ought to be devoted to the payment of the debts of the company, and his claim as a stockholder could not prevail over the creditor's prior right."

It is no sufficient answer to say that the company owed no other debts than the complainant's, and that the stock remaining after the cancellation of Clapp's shares was sufficient to satisfy complainant's demands. The equitable lien of complainant attached to the entire capital stock, and Clapp could not remit her to the hazard of a sole remedy against the remaining shares. They may become lessened in value or worthless, and her remedy thereby rendered incomplete.

Without going more at large into the subject, we are of opinion that the complainant was a creditor of the company at the time of the purchase and cancellation of the stock of Clapp, and that such purchase and cancellation was inoperative as against her; that the stock was trust funds, held in trust for the benefit of creditors of which Clapp was chargeable with notice; and further, that the property conveyed to him on the surrender of his stock must be treated as held under the same trust, and is subject to the payment of complainant's debt.

The decree of the court below is therefore reversed, and the cause remanded for further proceedings not inconsistent with the views herein expressed..

<div align="right">Reversed and remanded.</div>