# Galloway *et al. v.* Doe *ex dem.* Henderson *et al.*

### *Action of Ejectment.*

1. *Acts of Congress, granting public land in aid of railroads; how construed.*—In construing acts of Congress, granting public lands in aid of the construction of railroads, when, by the same statute. several grants are made for the benefit of different railroads, neither priority of location, nor priority of construction, gives priority of right; but where two or more railroads, legally located in pursuance of the act, cross each other, or approach each other, so nearly that the limits of

[Galloway *et al.* v. Doe, *ex dem.* Henderson *et al.*]

the primary grant for the benefit of each overlap, the grant is of equal undivided shares for the benefit of each road.

2. *Same; acceptance of grant by State.*—A State, by the acceptance of a grant by Congress of public lands in aid of the construction of railroads, becomes the trustee of the United States and as such its application and power of disposition of the lands is limited to the purposes expressed in the act creating the trust.

3. *Act of Congress of June 3, 1856, granting public land in aid of railroads; Act of Alabama of January 20, 1858, accepting grant; statute of limitations.*—Under the Act of Congress of June 3, 1856, "granting public lands in alternate sections to the State of Alabama to aid in the construction of certain railroads in said State," and the acceptance of the terms and conditions thereof by the State by act approved January 20, 1858, (Acts Ala., 1858-59, p. 3,) the statute of limitations did not and could not commence to run as to lands granted to the Tennessee & Coosa Railroad Company until the completion of that road.

4. *Same; statute of limitations as affecting land grants from United States.*—The bounty of the United States government, in the granting of public lands, cannot be run against or defeated by the statute of limitations before it reaches the hand of the beneficiary.

5. *Adverse holding of land for statutory period; presumption.*—The effect of the statute of limitations, or of adverse holding of land for the statutory period, is that at the end of the period fixed by the statute a grant is presumed to the adverse holder from the true owner.

6. *Grant of lands to Tennessee & Coosa Railroad Company; adjustment list as evidence.*—An adjustment list, certified to by the Commissioner of the General Land Office, showing certain lands as granted to Coosa & Tennessee Railroad, is admissible in evidence, where the title to lands granted by act of Congress to the State of Alabama to aid in the construction of the Tennessee & Coosa Railroad Company is in issue.

7. *Common law ejectment; demise counted upon must be subsequent to right of entry, to authorize recovery.*—In a common law action of ejectment, though the demise is a fiction, the plaintiff must count on one which, if real, would support his action, and to recover, the day on which the demise is alleged to have been made must be subsequent to the time when the claimant's right of entry accrued; and, therefore, in such action if the demise counted upon is stated to have been an-

[Galloway *et al.* v. Doe, *ex dem.* Henderson *et al.*]

terior to the accrual of the right of entry, the plaintiff must
necessarily fail in the maintenance of the suit.

APPEAL from the City Court of Gadsden.

Tried before the Hon. JOHN H. DISQUE.

This was a common law action of ejectment by John
Doe on the demise of Tennessee & Coosa Railroad Com-
pany, Anna J. Henderson, *et al.* against T. C. Callo-
way, *et al.*

Exhibits A and B to the bill of exceptions, referred
to in the opinion, were maps certified to by the Acting
Commissioner of the General Land Office, on which the
land in controversy was shown: the one being "Map of
the Tennessee & Coosa Railroad, drawn by Joseph R.
Abrahams, Chief Engineer," and the other purporting
to show the limits of the grant by the act of June 3,
1856, to aid in the construction of the Tennessee & Coosa
Railroad, certified to by said Acting Commissioner as
being "a true and literal exemplification of the original
prepared by and now filed in this office."

Exhibit C was an "Adjustment list of lands granted
to the Coosa and Tennessee R. R. in the State of Ala-
bama, under Act of June 3d, 1856. Six miles conflicting
with A. & C. R. R.," which was certified by the Com-
missioner of General Land Office as being "a true and
literal exemplification of the list on file in this office."
By this list the land in suit was shown to be vacant and
subject to grant.

The other evidence sufficiently appears from the opin-
ion.

At the conclusion of the evidence, the court at plain-
tiff's request gave to the jury the following written
charge: "The court charges the jury that if they be-
lieve all the evidence in this case, they must find in
favor of the plaintiff for an undivided one-half interest
in the lands sued for upon the demise laid in the Ten-
nessee & Coosa Railroad Co." To the giving of this
charge the defendants excepted, and, verdict and judg-
ment being rendered accordingly, now on appeal assign
its giving as error.

[Galloway *et al.* v. Doe, *ex dem.* Henderson *et al.*]

BURNETT, HOOD & MURPHREE and DORTCH & MARTIN, for appellant.—In view of the testimony, the question of adverse possession should have been submitted to the jury. "Questions of adverse possession depending upon the intention of the possessor, and the knowledge, or the means of knowledge, on the part of the owner of the land, are questions of fact (as well as law) to be determined by a jury; and in finding the *quo animo*, the jury must, of course, be left to their own view of the effect of the evidence."—Angell on Limitations, 399. "But the question as to whether the possession in a given case is adverse or under the owner's title, is for the jury, and the person setting up the claim takes the burden of establishing all the requisites to make his title by occupancy complete."—Wood on Limitations to Action 518; *Herbert v. Hanrick*, 16 Ala. 581; *Bowen v. Guild*, 130 Mass. 121.

It will be observed that the certified list offered in evidence by the appellee found in the record marked "Exhibit O" appears on its face to be a list of lands granted to the "Coosa and Tennessee Railroad Co." etc. How is the court to know that in this the Tennessee & Coosa R. R. Co. was intended? There is nothing in the record even tending to show that to be the fact. It was error to admit this without more. On this subject see *Christian v. Coleman*, 125 Ala. 171; *Lomb v. Pioneer S. & L. Co.*, 106 Ala. 591.

It is true that the ten year statute of limitations does not apply in this case because the entire road was not completed until the year 1891, the spring of that year, but the twenty year statute will apply as that statute applies to the State.—*Swann v. Gaston*, 87 Ala. 574; Code, § 2784 and authorities cited. The statute will run when title in trustee as well as otherwise. Hence it could make no difference that the title was in the State as trustee until the completion of the road.—*Bryan v. Weems*, 29 Ala. 423; *Lee v. Wood*, 85 Ala. 169; *Molton v. Henderson*, 62 Ala. 426.

It will be noted from the record that the appellee re-

[Galloway *et al.* v. Doe, *ex dem.* Henderson *et al.*]

covered on the demise No. 1. From the facts as detailed in the record, this was the only demise under which appellee had the remotest chance to recover. In that demise it is alleged that the Tennessee & Coosa R. R. Co. on the 1st day of January, 1885, leased to John Doe, etc. the lands in the controversy for a period of nineteen years etc. From the record it will be seen that the T. & C. R. R. was not completed until the spring of 1891, long after the date of making the alleged lease. The T. & C. R. R. Co. had no title of course until the completion of the. road under the facts in this case. Indeed that proposition is conceded by appellee. Hence title did not vest in the T. & C. R. R. Co. till the spring of 1891. It therefore had no title on January 1, 1885, and therefore had no right of entry at that time and no right to lease the same. This being true plaintiff could not recover on that demise. The day on which the demise is stated to have been made, must be subsequent to the time when the lessor's right of entry accrues.— Adams on Ejectment, page 189; Tyler on Ejectment, pages 382 & 383; Sedgewick & Wait on Trial of Title to Land, § 424; 7 Ency. of Pl. & Pr. page ·327 and note 1; *Dickenson v. Jackson*, 6 Cowen 147; *Van Allen v. Rogers*, 1 Johnson's Cases, 283; *Doe v. Marsten*, 3 Wend. 149; *Binny v. Chesapeake & Ohio Canal Co.*, 8 Pet. 214; *Cox v. Joiner*, 3 Bibb 297; *Wood v. Grunby*, 3 Harr. Johns. 13; *Brae v. McShane*, 13 N. J. L. 35; *Obert v. Bordine*, 20 N. J. L. 394; *McLennan v. McLeod*, 70 N. C. 363; *Bates v. Tucker*, N. Chig. (Vt.) 69; *Burhand v. Vanness*, 10 N. J. L. 102; *Hutchenson v. Horn*, Smith (Ind.) 242.

AMOS E. GOODHUE, *contra*.—There can be no serious controversy about the proposition, that unless barred by the statute of limitation plaintiff on one of the demises laid in her declaration was entitled to recover an undivided one-half interest in the land sued for.— *United States v. Tenn. & Coosa R. R.*, 176 U. S. 242; *St. Paul & S. C. R. R. v. Winona R. R.*, 112 U. S. 720.

The present suit was brought on the 14th day of April, 1900. The road from Gadsden to Guntersville was not completed until 1891. Therefore, there can be

no contention on the part of the appellant that the title of the Tenn. & Coosa R. R. Co., had been barred or extinguished by ten years adverse holding.—*Swann & Billups v. Lindsey,* 70 Ala. 507.

The bounty of the United States government cannot be defeated by the operation of the statute of limitations before it reached the hand of the beneficiary designated in the granting act.—*Gibson v. Schouteau,* 13 Wall. 99; *Standifer v. Swann,* 78 Ala. 88.

The Tennessee & Coosa Railroad Company had no right to sue until the completion of the road in 1891.— *Swann v. Lindsey,* 70 Ala. 507.

The evidence without conflict failed to show such continuous hostile possession on the part of Anderson as could possibly bar an action by the owner of an individed moiety in the land requires some attention to the facts stated in the record. See *Standifer v. Swann & Billups,* 78 Ala. 88.

HARALSON, J.—1. This suit has relation to lands granted by Congress approved the 3d of June, 1856, under "An Act granting public lands in alternate sections to the State of Alabama to aid in the construction of certain railroads in said State," the first section of which refers to the roads for the construction of which said lands were granted, viz., to roads "from the Tennessee river at or near Gunter's Landing to Gadsden, on the Coosa river; from Gadsden, to connect with the Georgia line of railroads, through Chattooga, Wills and Lookout Valleys" etc.; and the lands granted were to roads to be constructed severally. The quantity of land so granted was specified in the 4th section of the act to be, "not exceeding 120 sections for each of said roads, and included within a continuous length of twenty miles of each of said roads," to be sold, "when the Governor of said State shall certify to the Secretary of the Interior that any 20 continuous miles of any of said roads is completed;" then, another quantity of lands, not exceeding 120 sections for each of said roads having 20 continuous miles,

etc., as provided for the first 20 miles, and so, from time to time until said roads were completed. But it was provided, "If any of said roads is not completed within ten years, no further sale shall be made, and the lands unsold shall revert to the United States." The lands granted were "every alternate section of land designated by odd numbers, for six sections in width on each side of each of said roads," with the proviso, that if any of these odd sections in the six mile limit had before been sold or disposed of by the government, other lands of equal quantity might be selected in a manner prescribed, from lands of the United States nearest to the line of sections above specified, but in no case further than fifteen miles from the lines of said roads. It was also provided that the lands granted for and on account of said roads severally, should be exclusively applied in construction of the road for and on account of which such lands were granted and should be disposed of only as the work progressed, and the same should be applied to no other purpose whatever.

2. The Legislature by act approved January 20th, 1858, accepted the trust conferred, with the restrictions and upon the terms and conditions contained in said act of Congress. These proposed roads came on to be incorporated, under the laws of the State, one of them from Gunter's Landing to Gadsden on the Coosa river, as the Tennessee & Coosa Railroad Company, and others as the North East & South West Alabama Railroad Company and the Wills Valley Railroad Company, were later consolidated and amalgamated, by authority of the Legislature, into a corporation known as the Alabama & Chattanooga Railroad Company.—Acts, 1868, p. 207; *Swann & Billups v. Lindsey,* 70 Ala. 507.

In said act of the Legislature accepting the trust of the general government as to these lands it was provided, "that so much of the lands, interests, rights, franchises, powers and privileges as are or may be granted and conferred in pursuance of said act of Congress aforesaid, to aid in the construction of a railroad from the Tennessee river, at or near Gunter's Landing, to Gadsden on the Coosa river, are hereby disposed of,

21c

granted to, conferred upon and invested in the Tennessee and Coosa Railroad Company, a body corporate, created and existing under the laws of the State of Alabama, for the purpose and under the restrictions specified in said act of Congress," etc.

It seems to be conceded on each side, that the lands in question were not included in the first 120 sections of the grant for the benefit of the Tennessee & Coosa Railroad; that they were within the conflicting primary granted limits of that road and the Alabama & Chattanooga Railroad, and that they were opposite to that part of the Tennessee & Coosa Road, which lies between Gadsden and Littleton, which was completed to the latter point in 1889. These two roads then, as admitted, held undivided moieties of the lands granted to which they were equally entitled. In *McCarver v. Herzberg,* 120 Ala. 524, in construction of this statute, it was said: "In construing this, and similar acts of Congress, granting public lands in aid of the construction of railroads, it has become thoroughly well settled that when, by the same statute, several grants are made for the benefit of different railroads, neither priority of location, nor priority of construction gives priority of right; but where two or more roads, legally located in pursuance of the act, cross each other, or approach each other so nearly that the limits of the primary grant for the benefit of each overlap, the grant is of equal undivided shares for the benefit of each road;" citing authorities. It was also said: "By the acceptance of the grant, the State became the trustee of the United States, and as such its application and power of disposition of the lands was limited to the purposes expressed in the act creating the trust. The act of Congress was a law, as well as a grant, and any application or disposition of the lands by the State, in violation of the terms of the act was absolutely void."—*Swann & Billups v. Lindsey.* 70 Ala. 507; *Same v. Miller,* 82 Ala. 530.

4. The title of the land in question was originally in the United States. By said act of June 3d, 1856, it was vested in the State of Alabama as trustee. Upon

the completion of the Alabama & Chattanooga Railroad, in 1871, the title to the undivided moiety fell to that road or company. Thereafter, the title of the undivided moiety became the property of Swann & Billups, trustees, under the debt settlement act of 1876.—Acts 1875-76, p. 130. By their deed to James C. Anderson, dated 16th April, 1866, they conveyed the same to him, and by his deed of the 7th July, 1886, he conveyed the same to appellant T. C. Galloway.

The Tennessee & Coosa Railroad was not completed until the spring of 1891, and the title to the undivided moiety of the lands remaining in the State of Alabama under the terms of the said grant from Congress, upon the completion of the Tennessee & Coosa Railroad Company in that year, fell to that Company. In March, 1893, said company executed a deed conveying the lands together with other lands, to Hugh Carlisle, to whose title the appellee succeeded. Hugh Carlisle died without children in 1898, and without brothers or sisters except the plaintiff, his only sister.

5. Section 2794 of the Code, as to limitations of actions in 20 years, enumerates among them, (1) "Actions at the suit of the State against a citizen thereof, for the recovery of real or personal property."

The main contention of the defendant is to the effect, that the evidence introduced by him tended to show twenty or more years of adverse possession on the part of defendant and those under whom he claims, and that thereby the title of the trustee, the State of Alabama, and the beneficiary, the Tennessee & Coosa Railroad Company, has been extinguished. But a plain and complete answer to the defense is, that the evidence shows, without conflict, that this road was not completed until the year 1891, and under the act of Congress and the acceptance of the terms and conditions thereof by the State, the statute of twenty years,—conceding its application to cases of this character,—did not and could not commence to run, before the completion of said road. These acts, the rights of the parties thereunder, and the question of the statute of limitations was very thoroughly considered in the case of *Swann & Bil-*

[Galloway *et al.* v. Doe, *ex dem.* Henderson *et al.*]

*lups v. Lindsey, supra.* Quoting from and approving
the decision of the Supreme Court of the United States
on statutes of a like character, and directly applicable
here, it was said: "The act of Congress granting lands,
\* \* imposed conditions upon their alienation, except
as to the first 120 sections, which the Territory [State]
could not disregard. It declared, that the lands should
be exclusively applied to the construction of the road
in aid of which they were granted, and to no other pur-
pose whatever, and should be disposed of only as the
work progressed. It provided that their sale should be
made in parcels, as specified portions of the road were
completed, and only in that manner. The evident in-
tention of Congress was, to secure the proceeds of the
lands for the work designated, and to prevent any alien-
ation in advance of the construction of the road, with
the exception of the first one hundred and twenty sec-
tions. The act made the construction of portions of
the road a condition precedent to a conveyance on any
other parcel by the State. No conveyance in disregard
of this condition, could pass title to the company."
This court added: "From the foregoing principle it is
manifest, that the legal title to the lands in controversy
remained in the State of Alabama, until the road was
completed. Till then, the State alone could maintain
suit for possession. The right of the lessors of the
plaintiff to bring this action did not accrue until the
completion of the railroad. This was less than ten
years before this action was brought; and inasmuch as
time runneth not against the State, ten years statute
of limitations is no defense to the action."—*Swann &
Billups v. Gaston,* 87 Ala. 569; *McCarver v. Herzberg,
supra,* In this sort of case no time runneth against the
State.

The bounty of the United States government, it ap-
pears plain, cannot be run against or defeated by the
statute of limitations before it reaches the hand of the
designated beneficiary.

There is no distinction between adverse holding in
its application to ten and twenty years. The effect of

the statute in either case, is that at the end of the period fixed by the statute, a grant is presumed to the adverse holder from the true owner. Here the true owner, the State, could not grant contrary to the limitations prescribed by the act of Congress, and the Legislature had no more authority to put that period at twenty, than at ten or any other number of years. This defense was, therefore, unavailing to the defendant, and under the undisputed evidence, it was not a question for the jury as contended, but one which the court was authorized and bound to determine.

6. The exhibits to the bill were intended as evidence, not of title in the plaintiff, but to show that at the ·time of the grant the lands were vacant as they show, and subject to the grant. The title was established otherwise. Their purpose, again, was to show that the lands embraced in the adjustment list were within the conflicting limits of the Tennessee & Coosa Railroad and the Alabama & Chattanooga Railroad. They appear to be properly certified. Indeed no argument is made to the contrary, nor is argument made against the introduction of maps designated as A and B. But it is said that the adjustment list marked C was not properly introduced, because it shows the adjustment of lands granted to the Coosa & Tennessee Railroad Company, instead of to the Tennessee & Coosa Railroad Co. This exception is technical rather than meritorious, and indeed may be regarded as a self-corrective clerical misprision. There was no such land grant company under the act of Congress to which the adjustment list applies, as the Coosa & Tennessee Railroad Co. By reference to the act of Congress and to the several acts of the Legislature on the subject, it appears that the lands granted to aid the construction of a railroad from the Tennessee river at or near Gunter's Landing to Gadsden ' on the Coosa river, are disposed of and invested in the Tennessee & Coosa Railroad Co. We judicially know from these several public enactments on the subject, that they refer to the latter company, and there is no evidence, either in the acts themselves or elsewhere, of a corporation, or com-

[Galloway *et al.* v. Doe, *ex dem.* Henderson *et al.*]

pany called the Coosa & Tennessee Rivers R. R. Co., to
which the act of Congress by any sort of construction
could be made to refer. So, it abundantly appears that
the two designations refer to one and the same com-
pany, and that they are identical in meaning.

7. It is objected to the general charge in favor of
plaintiff, that the demise under which he recovered,—
numbered 1,—avers that the Tenn. & C. R. R. Co. on
the last day of January, 1885, leased to John Doe for a
period of nineteen years, the land in controversy; that
it appears that the said railroad was not completed un-
til the Spring of 1891, long after the date of the making
of said lease, and that the company had no right of en-
try at that time and no right to lease the lands. For
this reason it is argued that the plaintiff had no right to
recover on that demise.

Though the demise is a fiction, the plaintiff must
count on one which, if real, would support his action.
The lessor is supposed to have been capable of making
a demise, at the time when one is alleged to have been
made, and when the suit was commenced.—Tyler on
Ejectment, 382, 383. It has been well said, that in an-
cient practice, an actual entry on the lands in question,
was made by the lessor, and then the lease was sealed
and delivered. "In modern practice an actual entry is
not necessary, nor is it made, because by the form of the
procedure, it is to be confessed on the trial; but the
right to make an actual entry is indispensable, for if
the claimant has not a right to enter, he cannot have a
right to make a demise of the lands. Hence, it is a
fixed rule, that the day on which the demise is alleged
to have been made, must be subsequent to the time when
the claimant's right of entry accrues. And it follows,
that if the demise is stated to have been made anterior
to the accrual of the right of entry, the plaintiff must
necessarily fail, because the lease, which is an indis-
pensable though imaginary part of his title to recover,
is not confessed to have legal efficacy and operation, al-
though for the purpose of the trial, it is confessed to
exist. *De facto* only, not *de jure*, it is admitted."—

*Den. v. McShane,* 13 N. J. Law, 36, 37, and cases there cited; *Den v. Bordine,* 20 N. J. Law, 394; *Binney v. C. & O. C. Co.,* 8 Peters, 201, 218; 7 Ency. Pl. & Pr. 327, note 1, and authorities there collated. Here, as appears, the demise is laid in 1885, and the lessor did not acquire title, as is admitted, until in the spring of 1891. Not having the title at the time the demise was laid, the court erred in giving the general charge for the plaintiff and in refusing a like charge for defendant; and for this error the judgment must be reversed.

Reversed and remanded.