School Directors of District No. 5

*v.*

School Directors of District No. 10.

1. Statutes—*not rendered inoperative by mistaken reference to existing laws.* Where a law possessing all the requisites of a valid statute is passed by the General Assembly, containing clear requirements capable of being carried into effect, in connection with an existing general law on the same subject, a mistaken reference in such law to a previous statute can not defeat the will of the General Assembly, and render the law void.

2. Where an act purporting to be an amendment of another act describes the act to be amended truly, but states the date of the enactment of such law incorrectly, the mistaken date will be treated as surplusage, and will not affect the validity of the amendment.

3. Chancery—*recital of default in a final decree sufficient.* Where the final decree recites that the defendants not answering were defaulted, it will

be presumed that such was the case, although it does not appear in the record in any other place.

4. SCHOOL DISTRICTS—*boundaries.* Where a new school district was formed by two townships, and the records of each township showed the same boundary lines of the new district to a given point, and from that point one record gave a proper and possible line as forming the east boundary line, and the other record gave an impossible line, so much of the latter call as is impossible will be rejected, especially if by doing so the two records will exactly coincide.

5. SAME—*distribution of funds when new district formed.* Where the record of the board of trustees of schools shows that the board met for the purpose of appraising and distributing school property and funds consequent upon the formation of a new district from the several districts, which are specified, and then states the amounts distributed, but does not state who made the appraisement, it will be presumed that it was made by the board of trustees, who, by a reasonable and fair construction of the 33d section of the school law of 1857, as amended in 1865, are the proper persons to make the appraisement and distribution.

6. SAME—*entering funds to credit of, by treasurer, not essential to organization.* Entering the funds distributed to a new school district, to the credit of such district, by the treasurer of the board of trustees, as required by the statute, is not an essential precedent act to the legal organization of the new district.

7. SAME—*filing map with county clerk not a prerequisite to organization.* The filing of a map of a new school district, when formed, with the county clerk, is not essential, but only directory, and the failure to file such map is not an objection to the legal and valid organization of the new district.

8. REMEDY—*when school funds are withheld from new district, the remedy is in equity.* Where an appraisal and distribution of school funds is made upon the formation of a new district, and the old districts refuse to pay over the funds to the treasurer, and the board of trustees neglect to compel such payment, the proper remedy of the new district is by a bill in chancery to compel the collection of the fund and the application thereof to its legitimate use, and to prevent its perversion or loss.

APPEAL from the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

This was a bill in chancery, filed by the school directors of district No. 10, in township 43, in Winnebago county, against the school directors of district No. 5, in the same township, to compel the payment by the defendant to the complainant, or to the trustees of schools of township 43 for the use of com-

plainant, of the amount of an estimate and award made by the trustees of schools, of the school fund, to be paid by the defendant to the trustees of schools for the use of complainant, as a new school district formed out of parts of other school districts, of which the defendant was one, all the other districts having complied with the order of the directors, and paid over the portion of the school funds by them respectively ordered to be paid. Upon the hearing, the court rendered a decree granting the prayer of the bill, and the defendant appealed to this court.

Mr. C. M. Brazee, for the appellant.

Mr. William Lathrop, for the appellee.

Mr. Chief Justice Walker delivered the opinion of the Court:

It is first urged that, when district No. 10 was formed, there was no law in this State which authorized the trustees to apportion the school fund and property of the districts out of which the new district is formed. It is insisted that there is no 33d section of the amended school law of 1865. Whilst this may be true, and the reference to the 33d section of the amended school law in the order passed by the trustees was erroneous, the criticism seems to be hypercritical, as there is a 33d section of a school law, and that school law was amended at that session. Had the trustees referred to it as the school law as amended at that session, it would have been literally accurate, but we can see no loss of power on the part of the trustees because they referred to the law in the mode they did, the question being whether they had power to perform the act, and the result could not be affected if they made a wrong reference to the law, or even if no law had been referred to in the proceedings.

It is also urged that the act of 1865, in its first section, declares that section one of "An act to establish and maintain a system of free schools," approved February 22d, 1861, "be and the same is hereby amended," etc. (Sess. Laws, p. 112.)

On turning to the acts of 1861, p. 187, we find an act entitled "An act to amend the school law," and it refers to an act of the title of that referred to in the first section of the law of 1865, as approved the 16th of February, 1857, and this last named act is manifestly that to which reference was intended to be made in the act of 1865. It has the sections referred to in the act of 1865, and the sections thus referred to are found in each instance to contain the same matter as the amendatory sections do severally. The wrong reference is obviously a mistake, but we regard it immaterial; as, even if there had been no act on the subject of common·schools, such a reference could not defeat the will of the General Assembly. Here we have a law possessing all the requisites of a valid statute, passed by the General Assembly, containing clear requirements capable of being carried into effect in connection with the general school law, and we have no right, simply because there is a mistaken reference to a previous statute, to defeat that will.

Had there been no other law on the subject, and what purported to be the amendatory law had been so incomplete as to be incapable of being carried into effect, it would have necessarily fallen, until aided by further legislation; but suppose the act of 1865 had been entitled, as it is, to amend the school law, and contained its present provisions, or had its title been an act in reference to schools, without naming any act or section of any act, and had contained its present provisions, can any one doubt that it would have been enforced, repealing such portions of other acts as were repugnant, and adding its provisions to previous laws, and applying them to all subjects. to which they were properly applicable? An unessential false description can never defeat a grant, contract, or other instrument, nor should it defeat a statute. The general description in the bill, as amendatory of the act to establish and maintain a system of free schools, sufficiently describes the law to be amended and is true, whilst what follows, as to the date of its approval, is not true, and is impossible, and may be rejected without

affecting that which is true. There is no force in this objection.

There are a large number of other objections urged against the decree, some of which are only technical, whilst others do not have the force of technicalities. We shall proceed to consider such as we deem of sufficient importance to demand a discussion.

It is said that the town trustees, who failed to answer, were not defaulted. The decree finds they had been, and we will presume such to have been the fact, although appearing in no other place in the record; and we are not prepared to hold that such a recital would not be considered as evidence that the default was entered before the case was called, or whilst on trial. This is not ground for requiring a reversal, even if it could be held an error, which we think it can not be considered. The trustees did have power to divide the other districts and form a new one, and to divide the property, as prescribed in the 33d section of the general school law, as amended by the act of 1865; nor does the objection taken, that the new district, as described by the two townships, failing to coincide in calls, lines or quantity, render the organization of the district invalid. The description is precisely the same until the line reaches the north-west corner of section 4, when the record of township 40 then says it then runs south on the west line of that section, whilst the record of township 44 says it runs from the same point on the east line of the section. The falsity and impossibility of this last call, as given by the latter record, is apparent, and the word "east" may and should be stricken out and rejected as surplusage, when the calls in the two records will exactly coincide. In the sale of lands, such false particulars in description are frequently rejected, where it is manifestly a mistake, and when their rejection will sustain the grant and effectuate the intention of the parties; and, in promotion of justice and the purposes of our school system, the same rule should apply with its full force to a case like the present.

It is claimed that the property owned by district No. 5 was

not appraised before the division was made, by any one.    On turning to the proceedings of the board of trustees, we find they state that the board met for the purpose of appraising and distributing school property and funds, consequent upon the formation of district No. 10 from the several districts, which are specified.    It then states that "the amounts distributed to district No. 10 from the several districts are as follows, to-wit:  From district No. 5, on property, $450= $169.35; from district No. 5, on funds, $131.34=$48.50."  To our minds, it appears, without any doubt or obscurity, that there was $450 worth of property belonging to this district, and the portion thereof set off and apportioned to No. 10 was $169.35; that district No. 5 then had in funds $131.34, and $48.50 was distributed to No. 10.    To our minds, the records of the board of trustees prove that the distribution was thus made, beyond all cavil or doubt.    We do not see that it can mean anything else, or how a doubt can arise.

But it is said that the record of their proceedings fails to show who made the appraisement.    It is true, that it is not so stated, but we will and must presume that it was made by the board of trustees, to whom is confided the formation of the districts, the apportionment of the school fund and money, and other delicate and important duties in maintaining schools in their townships.    It is true the law does not, in terms, impose the duty on them of appraising and distributing the property, but the 33d section does expressly provide that they shall distribute the tax fund and other funds in the hands of the treasurer, and then requires the property to be appraised in a just and equitable manner, and to be distributed in proportion to the amount of taxable property remaining in each district. We think that a reasonable and fair construction of this provision requires the trustees to make both the appraisal and this distribution.    They are required to perform all other acts in dividing and forming districts and altering them, and had the General Assembly intended the appraisal to have been made by others, the requirement and the manner would, no doubt, have been provided for in the act itself.

There is no force in the objection that the treasurer of the board of trustees had failed to enter the funds thus distributed to District No. 10 to its credit. That can not be construed to be an essential precedent act to the legal organization of a school district. It is only intended as a means of keeping the funds of the districts separate, and as a means of facilitating a settlement with the treasurer, but surely not an act indispensable to the organization of the district. Such a neglect of duty by the mere agent of the board, although it may be gross, surely can not have the effect to abrogate the acts of the board in forming a school district. To so hold would be to empower the mere agent to control his principal, and to totally overthrow order, system and superiority in officers, and introduce utter confusion in the administration of public affairs and the enforcement of law.

It is next urged, with apparent earnestness, that this district was not legally and completely organized until the map of the districts in the township was made, certified to, signed, and filed as required by the law—in other words, that the filing of such a map was a prerequisite to the formation of the district. This, manifestly, is a misconception of the objects and purposes of the law. In the case of *Munson* v. *Minor*, 22 Ill. 594, this court held that the filing of such a map, properly certified, with the clerk, is not essential, but only directory. It is in nowise connected with the formation of the district. The law requires it to be made, and filed with and recorded by the county clerk. The obvious purpose of such a map is to enable that officer to correctly extend the taxes levied by the directors in the various districts. That there should be such a map filed for that purpose is true, but if not filed, and the clerk were to extend the taxes on the property in districts from the records of the board of trustees, it would not form a valid objection to the tax thus levied, nor can it, to the legal and valid organization of a school district, that the map is not properly made or filed. The officers failing to perform that duty may become liable to respond in damages for any loss the district

may incur by such neglect, but it can not be held to disorganize a district otherwise regularly formed.

It is next urged that a court of equity has no jurisdiction to afford the relief sought by this bill—that the remedy is complete at law, and that the bill should have been dismissed for that reason. That this is a trust fund, there can be no question; and it is equally apparent that when collected from appellant, it will and must be paid to the treasurer of the board of trustees, and held by him for the use of the district, under the control of the board of trustees. The district could not sue, recover and receive this fund, as they, until authorized by an order of the board of trustees, lawfully made, have no right to receive any portion of it. Again, they have no power to coerce the board of trustees to sue for and recover it, and they having failed to do so, the school district, as the *cestui que trust*, have the right to file the bill and have the fund collected and applied to its legitimate use, and to prevent its perversion or loss. This objection is not tenable.

We have examined the most prominent of the great number of objections urged to this decree. Those not discussed we regard as without sufficient plausibility to require discussion. A careful examination of the record has failed to disclose any error for which the decree should be reversed, and it must be affirmed.

*Decree affirmed.*