LANE, SHERIFF, ETC., appellant, *v.* COMMISSIONERS OF MISSOULA COUNTY, respondent.

SHERIFF'S FEE FOR BOARDING PRISONERS — *Montana act of 1881, as amended in 1885.* — The Montana act of February 18, 1885 (Laws Fourteenth Sess. 106, 107), "to amend an act to regulate the fees of sheriffs for the board of prisoners, approved February 10, 1881," and reducing the fees to seventy-five cents for each prisoner from $1.25, as allowed by the act of 1881, is valid, although the act of 1881 was merely an act repealing and amending a previous act, and the act so repealed is not referred to by its title; there being nothing in the organic law or statutes of Montana requiring an amendatory act to refer to the amended or repealed act by its title.   The legal fees of the sheriff for the board of the prisoners are therefore to be determined by the act of 1885.

*Appeal from Second District, Missoula County.*

WOODY & MARSHALL, B. PLATT CARPENTER, and WM. H. HUNT, for the appellant.

J. M. LANDERS, County Attorney, and STEPHENS & BICKFORD, for the respondent.

McLEARY, J.    This was an agreed case under the statute
(R. S. § 455, div. 1), and was tried and decided under the
following statement of facts: The appellant, from the 28th
day of February, 1885, to the 1st day of September, 1886,
was sheriff of Missoula county, and during that time fur-
nished two thousand three hundred and thirty-eight days'
board to the county prisoners confined in the jail of said
county.    The county commissioners allowed the appellant
only the sum of $1,551.15 for such board, which was at the
rate of sixty cents per day for each prisoner when five or
more prisoners were in jail at the same time, and seventy-
five cents per day for each prisoner when there were less
than five prisoners so confined.    The county commission-
ers concede that such board was worth $1 per day for
each prisoner; and it is agreed between the parties that, if
the county commissioners had a right to allow any sum not
to exceed $1.25 per day for each prisoner for such board,
there is due and owing to the appellant the sum of $786.55;
but if the county commissioners are prohibited by law from
allowing more than sixty or seventy-five cents (according to
the number in jail) for the board of each prisoner per day,
no sum whatever is due to appellant for board of prisoners.
Judgment was rendered by the district court for the defend-
ant, and from that judgment the plaintiff appealed.

The whole question turns on the construction of the stat-
utes on this subject, which are the following:    R. S. p. 530,
§ 585, par. 2; Laws Twelfth Sess. p. 2, second act on page;
Laws Thirteenth Sess. pp. 107, 108, § 1; Laws Fourteenth
Sess. pp. 106, 107.

The provision of the Revised Statutes (page 530, § 585,
par. 2) reads as follows: "The dieting of prisoners per day
shall not hereafter exceed $2 per day, and it shall not be in
any sum exceeding what the county commissioners believe
to be the actual value thereof."

This law was passed on the 13th of February, 1874, and
was re-enacted into the Revised Statutes on the 25th of
January, 1881.    On the 10th day of February, 1881, the

legislature repealed the second paragraph thereof, and added thereto the following, to wit: "The fees allowed sheriffs of the respective counties of the territory of Montana for board of prisoners shall be such as the county commissioners may deem a reasonable compensation therefor, not to exceed the sum of $1.25 per day." Laws Twelfth Sess. p. 2.

On the 7th of March, 1883, this last act, by reference to its date and title, was amended to read as follows: "The fees allowed sheriffs of the respective counties of the territory of Montana for boarding and dieting prisoners shall not be more than $1.25 per day for each prisoner. The sheriff shall have a jailer, and as many guards as the county commissioners may deem necessary, who shall receive such compensation as the said county commissioners may allow." Laws Thirteenth Sess. pp. 107, 108, § 1.

On the 18th day of February, 1885, the legislature passed another act, reading as follows:

"AN ACT to amend an act to regulate the fees of sheriffs for board of prisoners, approved February 10, 1881.

"Section 1.    That the above-recited act be so amended as to read as follows:

"Section 2.    The fees allowed sheriffs of the several counties of this territory for the board of prisoners confined in jail, under their charge, shall be such as the county commissioners may deem a reasonable compensation therefor, not to exceed the sum of seventy-five cents per day for each prisoner when there is a less number than five; when there are five, or over that number, sixty cents per day." Laws Fourteenth Sess. 106, 107.

It is a primary rule of construction that *all statutes should be so construed as to carry into effect the true intent of the legislature.* R. S. Mont. div. 1, § 613; Sedg. St. & Const. Law, 193 *et seq.*, 229–235; Bac. Abr. tit. "Statute," 238; Com. Dig. 11; *Binney* v. *Chesapeake & Ohio Canal Co.* 8 Pet. 201; *Miner* v. *Mechanics' Bank,* 1 Pet. 46; *Brown* v. *Barry,* 3 Dall. 365; Donati's Rules, rule 1, American Rules, rule 6, Dwar. St. 144; Vattel's Rules, Potter's Dwar. St.

128; American Rules, Potter's Dwar. St. 154; *Casey* v. *Harned*, 5 Iowa, 9; *Kottwitz* v. *Alexander*, 34 Tex. 712; *Graham* v. *Stonington*, 10 Amer. Dec. 125, 4 Conn. 209; *Tyson* v. *Postlethwaite*, 13 Ill. 727; *Walker* v. *State*, 7 Tex. App. 260.

We believe this rule of following the intention of the legislature applies as well to the construction of several statutes, considered together, as it does to the interpretation of a single statute, considered alone. *Thorpe* v. *Schooling*, 7 Nev. 17. The object in either case is to ascertain what is the law; and, if there are several statutes on the same subject contradictory in their provisions, it must be the purpose of the court to find out which the legislature intended should prevail.

Then, the purpose of this investigation should be to ascertain, if possible, what was the intention of the legislature. of Montana on the subject covered by this legislation; or, in other words, in what way and how much was it intended should be paid to sheriffs for the board of prisoners confined under their charge. But, from the experience of courts in this as in almost every other matter falling within their consideration, certain rules have been deduced which it is best and safest for subsequent courts to follow. Indeed, it has been wisely said by a learned court that " we can only ascertain the legal intent of the legislature by the language which they have used, applied and expounded conformably to the settled and well-known rules of construction." *Com.* v. *Kimball*, 21 Pick. 376, 377. One of these rules applicable to the case in hand is that *repeals by implication are not favored. City of St. Louis* v. *Independent Ins. Co. of Mass.* 47 Mo. 149, citing other Missouri cases; *Casey* v. *Harned*, 5 Iowa, 10, and cases there cited; *Distilled Spirits*, 11 Wall. 365; Potter's Dwar. St. 154, 155, note 4; *Pacific R. Co.* v. *Cass Co.* 12 Amer. R'y Rep. 343, 53 Mo. 17; *Walker* v. *State*, 7 Tex. App. 257; *Thouvenin* v. *Rodrigues*, 24 Tex. 468; *Napier* v. *Hodges*, 31 Tex. 287; *Cain* v. *State*, 20 Tex. 370; *Sherman* v. *Wolfe*, 27 Tex. 72;

*Neil* v. *Keese*, 5 Tex. 33.    Another equally well-established
and equally applicable rule is that, *when several acts can be
harmonized by a fair and liberal construction, it must be
done.*    *McCool* v. *Smith*, 1 Black, 470, 471; *People* v. *Barr*,
44 Ill. 201; *Casey* v. *Harned*, 5 Iowa, 10; Potter's Dwar.
St. 155 *et seq.*, note 5.    On the other hand, it has been re-
peatedly decided that, *if two statutes are repugnant in any
of their provisions, the latter act, without any repealing
clause, operates, to the extent of the repugnancy, as a repeal*
*of the first.    U. S.* v. *Tynen*, 11 Wall. 92; *Henderson's To-
bacco*, id. 657.    And, as a corollary to the foregoing, it has
been well said that " the simple re-enactment of an existing
law does not necessarily repeal it."    *Cordell* v. *State*, 22
Ind. 1; *Kesler* v. *Smith*, 66 N. C. 156; *Cramer* v. *Milwaukee*,
18 Wis. 274.

It is said by the supreme court of Massachusetts, in the
case of *Com.* v. *Kimball*, that " where one statute is enacted
in the same terms as a former one, without a repealing
clause, and without any change of provisions, it may, per-
haps, be well maintained that one is no repeal of the other,
and that both are in force."    21 Pick. 377.    This was held
in relation to a criminal statute, and *a fortiori* it would
seem to be the case in regard to a statute merely of a civil
nature.

Again, in arriving at the intent of the legislature, it fre-
quently happens that two intentions seem apparently in
conflict, and then it is a well-settled rule that, " *a general
intent appearing, it must control the particular intent.*"
Cooley, Const. Lim. 71, note 4.    And a still further rule, to
be always observed, is that " *every legislative act must have
a reasonable construction.*"    American Rules, Potter's Dwar.
St. 154.

Applying these rules and principles to the case before us,
we find that there is no question made that the law of the
twelfth session repeals the provision cited from the Revised
Statutes, for there are express words of repeal contained in
the subsequent enactment.    For that reason counsel on

both sides take the law of 1881 as the basis in this investigation. Proceeding upon this view of the case, we find the following to be the case: That law leaves the question of compensation to sheriffs for the board of prisoners expressly to the discretion of the board of county commissioners, only fixing a maximum limit of $1.25 per day. The act of 1883 by its terms amends the law of 1881, and, without saying anything about the county commissioners, fixes the same limit of $1.25 per day, but provides for guards to be allowed to the sheriffs, who are to be paid such compensation as the county commissioners may allow. It was not necessary, in order to give the board of county commissioners the right to fix the compensation of sheriffs for boarding prisoners, to expressly mention it in the statute. In the absence of such a provision it was a part of their general duties to pass upon all such claims. The sheriff could present his bill, and it would be allowed for such amount as the county commissioners would deem a reasonable compensation therefor. The law of 1883, then, did not in this particular materially change the law of 1881. It was a substantial re-enactment of it. Then the law of 1881 may have been said to be in force in 1885, with the additional provision in regard to the guards allowed to the sheriffs. Cases cited above. Then the law of 1885, however awkwardly expressed, did not attempt to amend a repealed act, or engraft a new provision upon a dead statute. It was the evident intention of the legislature to reduce the maximum limit within which the county commissioners were allowed to fix the compensation of sheriffs for the board of prisoners. Upon this point the law of 1885 is in direct conflict with all preceding statutes. It is useless to ridicule the awkwardness with which it is drawn. It was evidently not the work of a skilful draughtsman, and was doubtless a very hurried piece of legislation.

Whatever weight these facts may have had in inducing the executive to withhold his approval from the act, as it appears to have become a law without his approval, they

cannot influence courts if the intention of the law-making power is manifest. Courts have no power "to insert what has been omitted, nor to omit what has been inserted." R. S. Mont. div. 1, § 612. "The intention of the legislature controls the courts, not only in the construction of an act, but also in determining whether a former law has been repealed or not. Whatever that body manifestly intended is to be received by the courts as having been done by it, provided it has in some manner, no matter how awkwardly, indicated or expressed that intention." *Thorpe* v. *Schooling*, 7 Nev. 17. Courts are not required, in the construction of statutes, to shut their eyes to what is perfectly evident to all other reasonable men. On the contrary, they are required by every obligation of the judicial office, to the utmost extent of their faculties, to discern the law, and to carry the statutes into execution. Could any person of ordinarily sound judgment and discretion be mistaken in what the legislature meant by this statute?

But these statutes may all be viewed from a different standpoint from any yet presented in the arguments or briefs of counsel. The first act passed on the subject of compensation to sheriffs for the board of prisoners which we need to notice was enacted on the 13th of February, 1874. This was embodied into the Revised Statutes in section 585 of the fifth division thereof, on the 25th of January, 1881. On the 10th day of February, 1881, the first amendment was passed. That act is entitled "An act to regulate the fees of sheriffs for the board of prisoners." After the enacting clause it reads: "Section 1. That all those portions of sections 585 and 748 of the fifth division of the Revised Statutes referring or relating to or providing for fees or compensation allowed the sheriffs of the several counties for the board or diet of prisoners be, and the same are hereby, repealed; that the following clause be added to 585 of the fifth division of the Revised Statutes" (then follows the paragraph quoted herein as the law of the twelfth session, or of 1881).

The article in the Revised Statutes in which section 585 is contained consists of two sections, and is headed "Fees of Sheriffs." It covers more than a page, and is composed of eight paragraphs, and in the revision was taken from four different acts of prior legislatures. The second paragraph of section 585 is the only "portion" which refers, relates to, or provides for the compensation or fees of sheriffs for the board or diet of prisoners, and is, of course, on that account, the only portion of that section repealed by the law of 1881. But that law says that the following clause shall "be added to section 585 of the fifth division of the Revised Statutes" (then follows the clause above referred to). This clause, then, by force of the law of 1881, became ingrafted upon or added to section 585 of the fifth division of the Revised Statutes, and, of course, a part thereof. Then the legislature of 1883 was mistaken when it undertook to amend the law of 1881 by reference to its title, quite as badly as was the legislature of 1885 when it undertook to amend the law of 1881. Each of these legislative assemblies should have expressed their intention by amending section 585 of the fifth division of the Revised Statutes of Montana. But will their mistakes in the title of the respective acts vitiate and nullify the entire statutes which they intended to enact? Such construction would nullify the three statutes by which the legislatures have attempted, at least, to amend the Revised Statutes in this particular, and to reduce the maximum limit within which the board of county commissioners are allowed to fix the compensation of sheriffs for the board of prisoners. Would this be giving the acts of the legislature a reasonable construction, as is required by the American rules found in Potter's Dwarris on Statutes, on page 154?

The same criticism might be applied to the titles of all these acts which has been so unsparingly heaped upon the title and the first section of the act of 1885. But there is nothing in the organic act, or the statutes of Montana, or in the common law, which requires a statute to have a title

at all.  The enacting clause and the body of the act form the statute.  A statute is only a declaration of the legislature that a given statement is the law.  Bouvier defines a *statute* to be "the written will of the legislature, solemnly expressed according to the forms necessary to constitute it the law of the state."  2 Bouv. Law Dict. 543.

That eminent jurist, Judge Black, says: "The preamble has been criticised with a minuteness which its importance does not warrant.  It is no part of the law. . . . Nobody doubts the meaning of the act under consideration.  It is undeniably intended to repeal the company's charter; and, what is more, the preamble has not a word in it inconsistent with that intention.  It is conceded that the preamble is inartistically drawn.  Some important facts are omitted, and others are defectively stated.  But the law would be good without a preamble, and a bad one does not hurt it."  *Erie & N. E. R. Co.* v. *Casey*, 26 Pa. St. 323.  To the same effect, *Edwards* v. *Pope*, 3 Scam. 470.

What has been said of the preamble in Pennsylvania may well be said of the title of an act in this territory.  The law is good without it, and a bad one does not hurt it.  And so it is of the first section of the act of 1885.  It was, no doubt, inartistically drawn, and was inserted under a mistaken notion of the force and effect of prior legislation, but it was not necessary to the vitality or validity of the statute.  The statute is included in the enacting clause, and that portion designated as section 2; and there is enough in these to correct any errors in the other parts of the law.

But this case seems to us analogous to cases where a statute is found to be, in parts of it, in contravention of some constitutional provision.  The parts so found to be contrary to the constitution are absolutely null and void, and have no more force and effect than if they had never been written.  But this does not affect the other parts of the statute which are constitutional.  "Statutes that are constitutional in part only will be upheld so far as they are not in conflict with the constitution, provided the allowed

and prohibited parts are severable." *Packet Co.* v. *Keokuk,* 95 U. S. 89.

If we take the whole law together, nobody can doubt what it means. All these three statutes mean to amend the provisions of section 585 of the fifth division of the Revised Statutes; and that intent is clearly apparent if we will but exercise the ordinary faculties of perception with which all reasonable men are endowed. There is no provision in the organic act or in the statutes of Montana, as there is in many of the state constitutions or statutes, requiring an amendatory or repealing act to refer to the amended or repealed act by its title, or to re-enact the section amended, and such like, and for that reason these formalities are unnecessary.

The case of *Thorpe* v. *Schooling,* 7 Nev. 17, referred to above, is a case very similar to the one at bar, and in that case the amendatory act was held to be valid, regardless of the errors which crept in, but which did not obliterate the intent of the legislature.

Fully believing that it was the legislative will, solemnly expressed, according to the necessary forms, that the sheriffs should not receive more than seventy-five cents per day for the board of prisoners in jail, we are compelled to hold that the law of 1885 is in force, and is, in effect, a part of the Revised Statutes.

There being no error in the judgment of the court below, the same is hereby affirmed.

*Judgment affirmed.*

WADE, C. J., and BACH, J., concur.