The Louisville and Nashville Railroad Company *et al.*

*v.*

The City of East St. Louis.

*Filed at Mt. Vernon  November 22, 1890.*

1. Special assessments—*local improvement—what to be so considered—who shall determine.*  The statute does not define what shall be considered a local improvement.  That question is left solely to the determination of the city councils or village boards.  Their decision as to the utility of an improvement upon streets, and whether it is to be treated as a local improvement for the purpose of raising funds by special assessments to pay for it, is final, in the absence of fraud.

2. A street improvement may be treated as a local improvement, and paid for by special assessments, although it may not benefit abutting property.  A special assessment may be made on property benefited by the improvement, whether it is abutting and contiguous to the improvement or not.  The question in every case is, will the property assessed be specially benefited by the proposed improvement.

3. Same—*for viaduct in a public street.*  A city council has the power, under section 62, article 5, chapter 24, of the Revised Statutes, to construct a viaduct in a public street by special assessment.

4. The fact that a viaduct over railway tracks in the street is proposed to be extended across a creek, will not necessarily render a proceeding to build the same by special assessment invalid.  In this case,

in determining to construct a viaduct in a street over certain railway tracks, it was found impossible to construct such way, with a proper approach, without extending the structure across a creek near by ; and it appeared that the cost of a suitable viaduct at that place would not be increased by reason of its extension over the creek. The improvement as so proposed to be made, might well be the basis of a special assessment.

5. Same—*description of improvement—by reference in ordinance to plans, etc.* . An ordinance for a local public improvement may refer to plans, profiles and specifications attached thereto, for a more full and complete description of the nature, kind and character of the proposed work.

· 6. Same — *benefits — to be assessed against property — not persons.* Property can be assessed for public improvements on the principle of benefits conferred on it,—and not on its owner generally ; and it must appear from the proceedings that the assessment is made upon this principle.

7. Same—*what subject to special assessment—right of way under mere license.* A mere contract right in one railroad company to run its trains over the track of another company, the right being held subject to being determined upon notice, does not invest the former company with such ownership in the right of way as can be subjected to special assessment.

8. Same—*benefits—in the case of several parcels—assessment to be several—not in gross.* The statute (Rev. Stat. chap. 24, art. 9, sec. 140,) requires the commissioners, in making their assessment roll, to give a description therein "of each lot, block, tract or parcel of land, and the amount assessed as special benefits thereto." If the benefits are assessed in gross on several tracts or lots, this will invalidate the report, and render the assessment roll liable to objection when offered in evidence.

9. Commissioners appointed to assess the benefits to accrue from the construction of a viaduct in a public street, assessed to a railway company "part of blocks 8 and 9, and right of way across Broadway." The blocks consisted of lots. On application to confirm the assessment, the report of the commissioners showing the assessments was offered in evidence, and objected to on the ground the benefits had not been assessed to each of the lots and right of way separately : *Held,* that the objection was well taken.

10. Statutes—*repeal by substituting new section.* An amendment of a section of a statute by the substitution of a distinct and complete section operates as a repeal of the section so amended.

11. Same—*amendment of a repealed section is void.* A statute purporting to amend a section of a prior act after its repeal, is invalid and abortive. A law not in existence is not the subject of amendment.

42—134 Ill.

APPEAL from the County Court of St. Clair county; the Hon. John B. Hay, Judge, presiding.

Messrs. Lansden & Leek, and Mr. J. M. Freels, for the appellants:

The ordinance for the proposed viaduct is void, for the reason the owners of property on the street failed to petition for the improvement.   See act of 1889, amending act of 1872.

The ordinance must definitely specify the nature, character, locality and description of the contemplated improvements, or the court will have no authority to confirm the assessments. *Levy* v. *City of Chicago*, 113 Ill. 650; *City of Sterling* v. *Galt*, 117 id. 11; *Village of Hyde Park* v. *Spencer*, 118 id. 446; *City of Kankakee* v. *Potter*, 119 id. 324; *Ogden* v. *Town of Lake View*, 121 id. 422.

Mr. J. M. Hamill, for the appellant the Louisville and Nashville Railroad Company.

Messrs. G. & G. A. Koerner, for the appellant the Illinois and St. Louis Railroad and Coal Company.

Messrs. Conkling & Grout, for the appellee:

The right of way in a street is an interest in realty, and subject to assessment, either for special or general purposes. Welty on Assessments, 361; Washburn on Easements, par. 5, sec. 5; *Chicago* v. *Baer*, 41 Ill. 312; *Parmelee* v. *Chicago*, 60 id. 267; *City Railway Co.* v. *Chicago*, 90 id. 575; *Railway Co.* v. *People*, 120 id. 106.

Mr. F. G. Cockrell, also for the appellee.

Mr. Justice Wilkin delivered the opinion of the Court:

Broadway, in East St. Louis, runs east and west, crossing Cahokia creek.   The street is crossed by several railroad tracks, immediately east of the creek.   In July, 1889, the city council

passed an ordinance for the construction of a viaduct over these tracks, which was also to span the creek. It was provided by the ordinance, that this viaduct should be paid for by a special assessment upon the property benefited thereby, to the amount that the same could be legally assessed, and the balance by general taxation. The cost was estimated to be $55,000. The commissioners appointed to make the assessment, assessed benefits as follows:

| Name of Owner. | Part of Lot or Land. | Sub-lot. | Lot. | Block | Assessment. | |
|---|---|---|---|---|---|---|
| | | | | | Dollars. | Cts. |
| Louisv. & Nashville R. R. Co. | —Part of blocks 8 and 9, and right of way across Broadway .............. | ..... | ..... | ...... | 16,500 | ..... |
| C., C., C. & I. R. R. Co...... | —Right of way across Broadway .............. | ..... | ..... | ...... | 11,550 | ..... |
| East St. L. & C. R. R. Co..... | —Right of way across Broadway .............. | ..... | ..... | ...... | 7,150 | ..... |
| St. Louis, Alton & Terre Haute R. R. Co...... | —Part of surveys 127-128 betw. blocks 8 and 9, on the N.W. and blocks 7 & 10½ on the S.E. and right of way across Broadway | ..... | ..... | ...... | 6,050 | ..... |
| Ill. & St. L. R. R. & Coal Co.... | —10 ft. off northerly side of alley N. of block 10½, and right of way across Broadway .............. | ..... | ..... | ...... | 5,500 | ..... |
| Mobile & Ohio R. R. Co...... | —Right of way across Broadway .............. | ..... | ..... | ...... | 4,400 | ..... |
| St. Louis Bridge Co .......... | —Right of way across Broadway .............. | ..... | ..... | ...... | 2,750 | ..... |
| City of East St. Louis........ | ............. ........... | ..... | ..... | ...... | 1,100 | ..... |
| | | | | | $55,000 | ..... |

On application to the county court of St. Clair county, at its November term, 1889, for the confirmation of this assessment, each of the above named railroad companies filed objec-

tions.    The case was heard at the following February term, a jury being waived.    The court found the cost of the viaduct to have been over-estimated $10,000, and modified the assessment roll, by reducing each assessment, and the amount set down against the city, a proportionate part of said over-estimate, thus making the amount assessed to the—

| | |
|---|---|
| Louisville & Nashville R. R. Co. - - - - | - $13,500 |
| C., C., C. & I. R. R. Co. - - - - - | 9,450 |
| East St. Louis & Carondelet R. R. Co. - - - | 5,850 |
| St. Louis, Alton & Terre Haute R. R. Co. - - | 4,950 |
| Illinois and St. L. R. R. and Coal Co. - - - | 4,500 |
| Mobile & Ohio R. R. Co. - - - - - | 3,600 |
| St. Louis Bridge Co. - - - - - - | 2,250 |
| City of East St. Louis. - - - - - - | 900 |

The objections were thereupon overruled, and the assessment confirmed as modified.    The Louisville and Nashville Railroad Company, the Illinois and St. Louis Railroad and Coal Company, the Mobile and Ohio Railroad Company, and the C., C., C. and I. Railroad Company, appealed, but the last named company assigns no errors.    Three objections are urged here by each of the other appellants, going to the validity of said ordinance, viz : First, the improvement was not petitioned for by the owners of abutting property ; second, the nature, character and description of the improvement is not sufficiently described ; and third, the improvement described therein is not a local improvement, within the meaning of the statute authorizing the levy of special assessments.

The first objection is based on the amendment to article 9, chapter 24, section 19, of the act of 1872, passed June 1, 1889. (Laws of 1889, p. 87.)    It is insisted that the proviso in this amendment is a limitation upon the power of city councils or boards of trustees to pass an ordinance for local improvements. We do not assent to this view.    The amendment of 1889 is, however, invalid.    It purports to be an amendment to section

19, etc., of an act entitled "An act to provide for the incorporation of cities and villages," *approved April 10, 1872, in force July 1, 1872.* That section had been previously amended by the enactment of a distinct and complete section in 1887. (Laws of 1887, p. 107.) This amendment operated as a repeal of the act of 1872. (*People* v. *Young,* 38 Ill. 490.) Therefore, when the amendment of 1889 was passed, section 19 of the act of 1872 was not in existence, and was not the subject of amendment.

This view also disposes of the second objection to the ordinance. For the "nature, character, locality and description of the improvement," the ordinance refers to plans, profiles and specifications attached to it, and duplicate copies of which were stated in the ordinance to be on file in the city engineer's office of said city. It is not claimed that the description, by these plans, profiles and specifications, is not full and complete, but it is said they are no part of the ordinance,—that the amendment of 1889, like the original act of 1872, requires the description to be embodied in the ordinance, and therefore a mere reference to plans, etc., is not sufficient. We have seen, however, that the amendment of 1889 is void, and did not repeal that of 1887. The latter, therefore, remains in full force. By its express language a reference to plans, maps, plats, profiles and specifications is allowable. The ordinance also refers to the plans, profiles and specifications attached to the ordinance, and adds, "and hereby made a part of the ordinance." This makes such plans, etc., part of the ordinance, and would be a sufficient compliance with the statute even prior to the amendment of 1887. *Hutt et al.* v. *City of Chicago,* 132 Ill. 352.

Neither is the third objection, as a proposition of law, well taken. One of the powers conferred upon the city council in cities, by section 62, article 5, chapter 24, of the Revised Statutes, is, "to lay out, establish, open, alter, widen, extend, grade, pave, or *otherwise improve streets.*" Also, "to construct and

keep in repair bridges, viaducts and tunnels, and to regulate the use thereof." We can discover no good reason for holding, that under these powers a viaduct like the one in question may not, in a proper case, be paid for by special assessment as a local improvement. The statute does not say what shall be considered a local improvement. The determination of that question is left to the city council or village board. Acting within the scope of the power conferred by section 62, *supra*, the city council in cities, and the president and board of trustees in villages, are the judges of the utility of an improvement upon streets, and whether such improvement shall be treated as a local improvement in raising funds to pay for it. Their decision on these questions is final. (*Fagan et al.* v. *City of Chicago*, 84 Ill. 227.) Of course they must act reasonably and without fraud, otherwise their action will be void.

The position that a street improvement which does not benefit abutting property can in no case be treated as a local improvement, and paid for by special assessment, is not tenable. It is held in *Guild, Jr.* v. *City of Chicago*, 82 Ill. 472, that under section 1, of article 9, chapter 24, of the Revised Statutes, a special assessment could be properly made on property benefited by an improvement, whether abutting and contiguous to the improvement or not. The question in every such case is, will the property assessed be specially benefited by the improvement? Nor do we think, under the facts of this case, the cost of the improvement could not be lawfully paid by special assessment, merely because the viaduct would extend across Cahokia creek and serve the purpose of a bridge over that stream. The evidence shows that it would be impossible to construct a way over the railroad tracks in question, with a proper approach from the west, without crossing the creek, and the fair conclusion from all the proof is, that the cost of a suitable viaduct at that place would not be increased by the fact that it would extend over the creek. Therefore, if their property is liable to assessment at all, appellants

are in no way injured by the fact that the creek will be bridged. The assessment can be no greater than it would have been had there been no creek there.

It remains to be determined whether, under the facts appearing in the record, the assessment can be sustained.

Appellants objected, on the trial, to the introduction of the assessment roll in evidence, for the reason that it did not show what part of the assessment against each of them was assessed against each lot, block, tract or parcel of land separately, in the proportion in which they would be severally benefited by the improvement. This objection should have been sustained. Conceding, as contended in argument, but in respect of which we express no opinion, that an assessment might be made upon the basis of benefits accruing to the railroad companies named, in the use of the particular lots, blocks and right of way sought to be assessed, by reason of increased facility in running their trains across Broadway and the like, the assessment, as returned, shows that it was not attempted to be made upon that basis. The property assessed is parts of blocks, lots and right of way. Section 140, of article 9, chapter 24, of the Revised Statutes, requires the commissioners, in making their assessment roll, to give a description therein "of each lot, block, tract or parcel of land, and the amount assessed as special benefits thereto." The property so described can only be assessed on the principle of benefits conferred upon it—not on its owner generally; and it must appear from the proceedings that such was the principle upon which the assessment was made. (*Crawford et al.* v. *The People ex rel.* 82 Ill. 557; sec. 139, art. 9, *supra*.) Here, in the case of the Louisville and Nashville Railroad Company, the question is, will "parts of blocks 8 and 9 and the right of way across Broadway" be benefited $13,500; and certainly there should be some description of the property from which it could be seen that it would or might be benefited to that amount. Where blocks 8 and 9 are situated with reference to the improvement, or

even the railroad, does not appear. What parts of the blocks are assessed is not stated. What they are used for, or whether improved or unimproved, is not shown, nor does it appear how much of the $13,500 was assessed to them and how much to right of way. Neither is there an attempt to describe the right of way across Broadway. The description is equally uncertain and indefinite in the case of each of the other appellants.

This uncertainty as to what particular property was assessed is made more prominent by the fact that the city relies wholly upon the assessment roll to sustain the assessment, insisting that by it a *prima facie* case is made, which objectors have failed to overcome. No attempt whatever was made upon the hearing to support the commissioners' report by proof that the property would be benefited to the amount assessed. In chief the city rested its case on the report alone. Its evidence in rebuttal merely went to the question of a necessity for the viaduct, and the general benefits which would result to the railroad companies running trains across the street. No witness pretended to say to what extent the particular property assessed would be benefited for the use to which it was or might be appropriated, if at all. No one can take this assessment roll and from it determine how much the commissioners thought each lot, block, tract or parcel of land assessed would be specially benefited, or right of way be specially benefited in respect to its use as such, by the building of the viaduct; and it is impossible to read the entire record without being forced to the conclusion that they fixed the amount which each railroad company should pay, not upon the basis that particular lots or right of way would be specially benefited, but upon the theory that the owners would be benefited generally to that amount.

We are also of the opinion, that, even if the commissioners' report could be given the effect of making a *prima facie* case for appellee, it was fairly overcome by the proof of appellants. A number of witnesses testified on their behalf that a viaduct

built according to the plans and specifications attached to the ordinance would be an injury rather than a benefit to the companies using the tracks across Broadway, because one or more of its piers would so obstruct the view that more watchmen than are now required would be necessary to avoid collisions. No attempt whatever was made by the city to overcome or explain this evidence. Again, the proof clearly shows that neither the Mobile and Ohio Railroad Company nor the Illinois and St. Louis Railroad and Coal Company owns the right of way across Broadway. They each have but a contract right to run trains over the tracks of the East St. Louis and Carondelet railway. The right of the Mobile and Ohio Railroad Company, by the terms of its contract, is liable to be determined at any time by giving twelve months' notice in writing. The contract of the Illinois and St. Louis Railroad and Coal Company is limited to February 1, 1892, and thereafter may be terminated on ninety days' notice. It is clear that if this be, as we are inclined to hold that it is, a mere license to run over these tracks, neither of these companies had such ownership in the right of way across Broadway as could be subjected to special assessment.

Doubtless there exists a necessity for a viaduct at the place in question. It may be, as contended on behalf of the city, that the companies using the railroad tracks across the street should bear the expense of its erection; but it can not be seriously contended that they can be compelled to do so in this proceeding, in the absence of proof that their property assessed will be specially benefited to the amount levied against it.

We think the county court erred in confirming the assessment, and its judgment will be reversed.

*Judgment reversed.*