## THE VILLAGE OF MELROSE PARK

*v.*

F. DUNNEBECKE *et al.*

*Opinion filed June 23, 1904.*

1. STATUTES—*when amendment to an original act repeals intervening amendment.* An amendment of certain sections of an original act, which amendment repeals all acts or parts of acts in conflict therewith, repeals a prior amendment of the same sections which contains no repealing clause but merely changes the wording of the original sections, thereby becoming a part of the original act. (*L. & N. R. R. Co.* v. *East St. Louis*, 134 Ill. 656, explained.)

2. SAME—*amendment of 1901 to section 38 of Improvement act of 1897 is valid.* The amendment of 1901 to section 38 of the Local Improvement act of 1897, concerning the appointment of the commissioner to spread a special assessment, is valid, and the act of 1899, amending said section 38, is repealed by the act of 1901, although no specific reference is made thereto.

3. SAME—*improper appointment of commissioner is not ground for dismissing the petition.* Improper appointment of the commissioner to spread a special assessment is not ground for dismissing the petition, but only for setting the assessment aside and properly appointing a commissioner to spread the new assessment.

APPEAL from the County Court of Cook county; the Hon. ORRIN N. CARTER, Judge, presiding.

WILLIAM P. SHOCKEY, for appellant:

Where an act expressly repeals certain designated sections and in general terms all previous acts in conflict with it, it repeals every previous act identical with any of those expressly repealed. Endlich on Int. of Statutes, sec. 207, p. 27*a; State* v. *Barron*, 30 La. Ann. 167.

If the intention of the legislature is plain, a law is held valid although in the amendatory act reference is made to a repealed statute. *Commonwealth* v. *Kenneson*, 143 Mass. 419.

A statute revising the subject matter of a statute will operate as repeal of prior conflicting provisions, whether expressly referred to or not. *Washington Heights* v. *Moffat*, 57 Ill. App. 269; *People* v. *Nelson*, 156 Ill. 364.

Where a law possesses the requisites of a valid statute passed by the General Assembly, it is the duty of the court to carry into effect the legislative will, notwithstanding a mistaken reference to a previous statute. *School Directors* v. *School Directors*, 73 Ill. 252.

A statute becoming inoperative may be amended. *People* v. *Onahan*, 170 Ill. 449.

Proceeding for confirmation of a special assessment is not terminated by setting aside an assessment because of the disqualification of commissioner. *Ewart* v. *Western Springs*, 180 Ill. 318.

Clifford H. Newell, for appellees:

The assessment is void because of the failure to procure an order of court for the appointment of a commissioner and permitting the assessment. *Railroad Co.* v. *East St. Louis*, 134 Ill. 656.

A law not in existence is not the subject of amendment. *Railroad Co.* v. *East St. Louis*, 134 Ill. 656; *People* v. *Young*, 38 id. 490.

A purported amendatory act to an act which is already amended, without further reference aside from the original act, is void. *Railroad Co.* v. *East St. Louis*, 134 Ill. 656; *People* v. *Young*, 38 id. 490.

Mr. Chief Justice Ricks delivered the opinion of the court:

This is a petition for the confirmation of a special assessment, filed by the village of Melrose Park, under an ordinance providing for the paving of First street from Thirteenth avenue to Twenty-fifth avenue. A number of objections to the confirmation of the assessment were filed, and on the hearing of the legal objections all the objections were overruled by the trial court except the objection that the person or commissioner who spread the assessment was not legally appointed. This objection was sustained by the court, and the petition was in

the same order directed to be dismissed as to the prop-
erty for which the objection was filed.   From this order
the appellant prosecutes this appeal, and urges that it
was error in the county court to sustain objection No. 45
of objectors, which is to the effect that said commissioner
was not legally appointed to spread the assessment, and
that the court erred in directing the petition to be dis-
missed as to the property of objectors.

The ordinance for the improvement was passed on
August 4, 1902, by the village board of appellant, and no
question is made as to the validity of the ordinance or
anything preceding its enactment, or, in fact, in refer-
ence to any other question in the case than the regular-
ity of the appointment of the commissioner to spread
the assessment.

After the petition was filed the president of the board
of trustees of the appellant village appointed one Julius
Frillman commissioner to spread the assessment cover-
ing said proposed improvement, and, without an order
of court appointing said commissioner and directing the
assessment to be made, said commissioner proceeded to
spread an assessment and make up an assessment roll,
which was placed on file in the office of the clerk of the
county court.   Upon the coming in of the assessment roll
appellees filed their objections.   The Forty-fifth objec-
tion simply states, "said commissioner was not legally
appointed."

The contention in this case arises over the legal effect
of three acts of the General Assembly in relation to local
improvements, and must abide the determination of this
court as to which of the three acts controls the proceed-
ing.   All of these acts related to and were in reference
to section 38 of the Local Improvement act of 1897, and
two amendments thereof.   The act of 1897 was a general
revision of all the laws theretofore existing in relation
to local improvements, and contains ninety-nine sections.
(Laws of 1897, p. 102.)   By the various provisions of the

act the details of all the necessary proceedings, from the acquirement of the ground or right of way to the completion of the improvement and the payment or issuing of bonds therefor, are specifically set forth.   Section 38 of that act is as follows:   "Upon the filing of such petition the court shall enter an order directing the superintendent of special assessments, in cities where such officer is provided for by this act, otherwise some competent person appointed by the president of the board of local improvements, to make a true and impartial assessment of the cost of the said improvement upon the petitioning municipality and the property benefited by such improvement."   Section 42 of the same act relates to the division of the assessment for the improvement into installments.   In 1899 the General Assembly passed an act entitled "An act to amend sections thirty-eight (38) and forty-two (42) of an act entitled 'An act concerning local improvements,' approved June 14, 1897, in force July 1, 1897," and the act declared that the section should be amended to read as follows:  "Sec. 38.  Upon the filing of such petition the court shall enter an order directing the superintendent of special assessments, in cities where such officer is provided for by this act, otherwise some competent person appointed by the court in which such petition is filed, to make a true and impartial assessment of the cost of said improvement," etc.   (Laws of 1899, p. 93.)   In 1901 an act was passed amending thirty-six sections of the act of 1897, and among these thirty-six sections so amended were sections 38 and 42.  Section 38 was amended to read as follows: "Upon the filing of such petition, the superintendent of special assessments, in cities where such officer is provided for by this act, otherwise some competent person appointed by the president of the board of local improvements, shall make a true and impartial assessment of the cost of the said improvement upon the petitioning municipality and the property benefited by such improvement."   (Laws of 1901, p. 106.)

The act of 1901 in no manner referred to or mentioned the act of 1899 amending said section 38, and it is contended by the appellees that by the amendment of 1899 section 38 of the act of 1897 was repealed by necessary implication, as the same section in the two acts related to the same thing and furnished a complete rule governing the matter to which it relates. It is further contended by appellees that section 38 of the act of 1897 being thus repealed by the amendatory act of 1899, the attempt by the General Assembly to amend section 38 of the act of 1897 was void and ineffectual, because there was no section 38 left in the act of 1897 and there was therefore nothing of that section to amend in 1901,—that a repealed statute cannot be amended. In support of this contention appellees cite *People* v. *Young,* 38 Ill. 490, in which case this court held, in substance, that when an amendatory act declares that a certain section of the amended act "shall be so amended that it shall read as follows," and then proceeds to make a distinct provision on the subject, that will operate to repeal the provision of the amended act named, substituting therefor the amendatory section. The latter case was followed in *Kepley* v. *People,* 123 Ill. 367. Appellees also rely on *Louisville and Nashville Railroad Co.* v. *City of East St. Louis,* 134 Ill. 656, in which case the following language is used (p. 660): "The first objection is based on the amendment to article 9, chapter 24, section 19, of the act of 1872, passed June 1, 1889. (Laws of 1889, p. 87.) It is insisted that the proviso in this amendment is a limitation upon the power of city councils or boards of trustees to pass an ordinance for local improvements. We do not assent to this view. The amendment of 1889 is, however, invalid. It purports to be an amendment to section 19, etc., of an act entitled 'An act to provide for the improvement of cities and villages,' approved April 10, 1872, in force July 1, 1872. That section had been previously amended by the enactment of a distinct and

complete section in 1887. (Laws of 1887, p. 107.) This amendment operated as a repeal of the act of 1872. (*People* v. *Young*, 38 Ill. 490.) Therefore, when the amendment of 1889 was passed, section 19 of the act of 1872 was not in existence and was not the subject of amendment."

The difference in the provisions of section 38 of these several acts is as follows: By the act of 1897 the court was to enter an order directing the persons pointed out in the act to make the assessments. By the amendment of 1899 the court was to make an order, and in that order was to designate the superintendent of special assessments, where there was one, and if none, then the court was to appoint "some competent person" to make the assessment. By the act of 1901 the court was not required to make an order, but the assessment was to be spread by the superintendent of special assessments, and if none, by some competent person appointed by the president of the board of local improvements. In the case at bar appellant proceeded under the act of 1901, and as there was no superintendent of special assessments the assessment was made by a person designated by the president of the village board, who, in such case, is president of the board of local improvements, and the difference in the procedure between the act of 1899 and the act of 1901, as applied to this particular case, is, that the president of the village board designated the person to make the assessment as provided by the act of 1901, while appellees claim that the person to spread the assessment should have been designated by the court, as there was no superintendent of special assessments in such village.

Appellant contends that the rule applied in the case of *Louisville and Nashville Railroad Co.* v. *City of East St. Louis*, *supra*, has no application to the case at bar, and that if it has, the rule there announced is contrary to the weight of authority, and should not be adhered to for the reason that the General Assembly frequently has amended original acts without noticing, and apparently without knowl-

edge of, amendatory acts thereof, and cites in its brief a number of such instances, and particularly section 42 of the act now in question, which was amended by the act of 1899 at the same time that section 38 was amended and was also amended by the law of 1901, and urges that the same question would arise upon section 42 of the same act that arises upon section 38. Upon the proposition that the rule announced in the case of *Louisville and Nashville Railroad Co.* v. *City of East St. Louis, supra,* is not sustained by the weight of authority, the appellant cites *School Directors* v. *School Directors,* 73 Ill. 249; *Wilkinson* v. *Keller,* 59 Ala. 306; *Commonwealth* v. *Kenneson,* 143 Mass. 419; *State* v. *Warford,* 84 Ala. 15; *Blake* v. *Brackett,* 47 Me. 28; *Bassett* v. *City of Jacksonville,* 19 Fla. 664; *Saunders* v. *Pensacola,* 24 id. 226; *Lane* v. *Missoula County,* 6 Mont. 473; *Carruthers* v. *Madison County,* id. 482; *Griggs* v. *Guinn,* 29 Abb. N. C. 144; *People* v. *King,* 28 Cal. 265; *Grier* v. *State,* 22 Tex. 588.

The case of *School Directors* v. *School Directors, supra,* would seem to be on all-fours with the case at bar. In that case school directors were proceeding under a certain amendatory act of 1865. That act attempted or purported to amend an act approved February 22, 1861. There was published in and as a part of the School law of 1861 certain sections of an act that was passed in 1857, and it was apparent to the court that the General Assembly had, through error, referred to the wrong act. Upon examination of the section of the act that was passed in 1857 and the amendment of 1865, both were found to relate to the same subject matter, and it was said (p. 252): "The wrong reference is obviously a mistake, but we regard it immaterial, as, even if there had been no act on the subject of common schools, such a reference could not defeat the will of the General Assembly. Here we have a law possessing all the requisites of a valid statute, passed by the General Assembly, containing clear requirements capable of being carried into effect in con-

nection with the general School law, and we have no
right, simply because there is a mistaken reference to a
previous statute, to defeat that will.  Had there been no
other law on the subject, and what purported to be the
amendatory law had been so incomplete as to be incapa-
ble of being carried into effect, it would have necessarily
fallen until aided by further legislation; but suppose
the act of 1865 had been entitled, as it is, to amend the
School law and contained its present provisions, or had
its title been an act in reference to schools without nam-
ing any act or section of any act and had contained its
present provisions, can any one doubt that it would have
been enforced, repealing such portions of other acts as
were repugnant and adding its provisions to previous
laws and applying them to all subjects to which they
were properly applicable?  An unessential false descrip-
tion can never defeat a grant, contract or other in-
strument, nor should it defeat a statute.  The general
description in the bill, as amendatory of the act to estab-
lish and maintain a system of free schools, sufficiently
describes the law to be amended and is true, whilst what
follows, as to the date of its approval, is not true and is
impossible, and may be rejected without affecting that
which is true."

The case of *Louisville and Nashville Railroad Co.* v. *City
of East St. Louis, supra,* does not purport to overrule the
case of *School Directors* v. *School Directors, supra.*  In fact,
the latter case is not mentioned therein, and, indeed, we
do not think it should be held to have overruled the lat-
ter case but should be regarded as an exception to the
rule.  The only States that we are able to find that have,
without qualification, adopted the rule announced in the
case of *Louisville and Nashville Railroad Co.* v. *City of East
St. Louis, supra,* are Colorado, in *Wall* v. *Garrison,* 11 Col.
517; Georgia, in *Lampkin* v. *Pike,* 115 Ga. 827, and Indiana
in a number of cases, beginning with *Draper* v. *Falley,* 33
Ind. 465, down to *Peele* v. *Ohio, etc. Oil Co.* 158 Ind. 377, and

in a number of cases between those in that State, while our examination discloses that the contrary rule is announced by the Federal court in *Columbia Wire Co.* v. *Boyce,* 104 Fed. Rep. 172, and in Alabama, California, Florida, Kansas, Massachusetts, New Jersey, Michigan, Texas, New York, Ohio and Wisconsin; and there may be added to the cases cited by appellant, *Harper* v. *State,* 109 Ala. 28, *Fletcher* v. *Prather,* 102 Cal. 413, *Reynolds* v. *Board of Education,* 72 Pac. Rep. 274, *People* v. *Pritchard,* 21 Mich. 235, *State* v. *Brewster,* 39 Ohio St. 653, *White* v. *Inebriate's Home,* 141 N. Y. 123, and *Golonbieski* v. *State,* 101 Wis. 333, all of which seem to announce and support the rule that "where the amendment is considered as a continuance of so much of the law as is left unchanged in form or substance, or as having taken the place of the original enactment and as incorporated therein, for all purposes, including amendment, a subsequent statute purporting further to amend the original act is to be construed in accordance with the intent of the legislature as operating on the prior amendment, and effect will be given to it." (26 Am. & Eng. Ency. of Law,—2d ed.—704.)

In *Commonwealth* v. *Kenneson,* 143 Mass. 419, section 9 of a public statute known as statute 57 was amended in 1885. In 1886 another statute was enacted amending the same section of statute 57 without noticing the amendment of 1885, and the court there said: "By statute 1885, chap. 352, sec. 6, 'section 9 of chapter 57 of the Public Statutes is hereby amended so as to read as follows,' etc., and by statute 1886, chap. 318, sec. 2, 'section 9 of chapter 57 of the Public Statutes is hereby amended so as to read as follows,' etc.; and in each case there follows a sentence which covers the whole subject of the original section and may well be held to have impliedly repealed the preceding provisions. The intention of the legislature is plain that after statute 1885, chap. 352, took effect instead of public statute chap. 57, sec. 9, the sixth section of chapter 352, statute 1885, should be in force,

and that after statute 1886, chap. 318, took effect, section 2 of this statute should be in force instead of section 6, chap. 352, statute 1885. The sections in each statute are complete in themselves, and, being substitutes for each other, stand like independent enactments."

In *People* v. *Pritchard*, 21 Mich. 235, it is said (p. 241): "The only other objection to the act of 1869 is, that it is inoperative because it purports to amend a section of the Compiled Laws which had no existence. It seems that section 2463 of the Compiled Laws, which governs the case, had previously been amended by another statute, and the effect was, it is claimed, to repeal the section as it stood in the Compiled Laws, leaving the amendatory statute to stand instead thereof, and the argument is, that a subsequent amendatory statute could not properly be entitled 'An act to amend section 2463 of the Compiled Laws,' because there was no longer any such section and an act thus entitled could have nothing to operate upon. This reasoning seems to us too refined for practical value. Under our constitution the mode of amending a section of a statute is by enacting that the section in question 'shall read as follows.' The position of the section in the original statute is not changed, and there is no reason why subsequent amendments of the same section should not be made by reference to its number in the original statute."

The act of 1899 was entitled "An act to amend sections 38 and 42 of an act entitled 'An act concerning local improvements,' approved June 14, 1897, in force July 1, 1897," and the enacting clause provided that the sections should "be amended to read as follows," etc. That act contained no repealing clause, and the only change it made in section 38 was, that it required that the person who should make the assessment should be some competent person appointed by the court. The amendatory act of 1901 is entitled "An act to amend an act entitled 'An act concerning local improvements,' approved June

14, 1897," and the first section or enacting clause provides
that sections (thirty-six in number) there designated, and
among them sections 38 and 42, of an act entitled "An
act concerning local improvements," approved June 14,
1897, be "amended so as to read as follows, respectively."
That act contains a repealing clause, and repeals all acts
and parts of acts in conflict with it.

Mr. Black, in his work on Interpretation of Laws,
(sec. 131,) says: "An amendment of a statute by a subse-
quent act operates precisely as if the subject matter
of the amendment had been incorporated in the prior
act at the time of its adoption, so far as regards any
action had after the amendment is made, for it must be
remembered that an amendment becomes a part of the
original act, whether it be a change of a word, figure,
line or entire section, or a re-casting of the whole lan-
guage,"—citing *Holbrook* v. *Nichol*, 36 Ill. 161.

The act of 1901 was a general revision of the act of
1897, and if the rule announced by Mr. Black, *supra*, and
supported by this court, is sound, the act of 1899 was in-
corporated in and became a part of the act of 1897, as it
only purported to change two sections of the act of 1897,
but gave to the two sections, as thus changed, their
original number; and if those two sections did become
and were in 1901 a part of the act of 1897, they were
properly and sufficiently referred to by their section
number by the amendatory act of 1901.   Furthermore, if
any effect is to be given to the repealing clause of the
act of 1901, then it must be said that they, with the sec-
tions therein enacted and amended, are the existing and
controlling law upon that subject, or that there is no law
at all upon our statute books covering it.   The General
Assembly, by clear and apt terms and language, enacted
certain provisions which it said in legal effect and in
fact should be incorporated upon and become a part of
the Local Improvement act of 1897, and by its last or
repealing clause declared that all acts or parts of acts

in conflict with its provisions were repealed. The repealing clause was as much a part of the act as any other section of it. "Where an act is passed covering the whole of a particular subject or field of legislation, it is customary to insert a general clause repealing 'all acts or parts of acts inconsistent therewith,' and such a clause is effective in repealing inconsistent enactments, in the absence of any constitutional prohibition against such method of repeal; but the repeal extends only to those acts on the same subject, or parts of such acts, clearly inconsistent and irreconcilable with the provisions of the repealing act, and only to the extent of the conflicting provisions." (26 Am. & Eng. Ency. of Law, —2d ed.—719.)

If the amendment of 1899 be regarded so distinct from the general act of 1897, which it purported to amend, that a special reference to it by the amendment of 1901 was necessary for its identification, then it would seem that the act of 1901, relating to the same matter, covering all that the amendatory act of 1899 covered and many more sections of the original act besides, and the act of 1899 being in conflict with and repugnant to sections 38 and 42 of the act of 1901, should be treated, so far as the act of 1899 is concerned, as an independent act of the General Assembly relating to the same subject and fully covering it, and by its repealing clause having the effect to repeal said act of 1899.

We are therefore of opinion that the village authorities properly pursued the provisions of the act of 1901, and that the court should have overruled the objection of appellees. It may further be said that the court also erred in ordering the petition dismissed. There was no defect claimed or pointed out prior to the filing of the petition or in the petition itself. The only defect claimed was that the court should have appointed the person who spread the assessment. That occurred after the filing of the petition, and if the court had been warranted

in sustaining the objection upon that ground, it should for that reason, only, have set aside the assessment and appointed a commissioner to make it. But we think the court erred in its views of both questions presented and that the proceeding was according to the existing law.

The judgment of the county court is reversed and the cause remanded.                    *Reversed and remanded.*